Manuel A. IGLESIAS, Plaintiff,
Appellant,

v.

MUTUAL LIFE INSURANCE
COMPANY OF NEW YORK,
Defendant, Appellee.

Manuel A. IGLESIAS, Plaintiff, Appellee,

v.

MUTUAL LIFE INSURANCE
COMPANY OF NEW YORK,
Defendant, Appellant.

Nos. 97–1648, 97–1649.

United States Court of Appeals,
First Circuit.

Heard Feb. 26, 1998.

Decided Sept. 17, 1998.

---

238

Charles S. Hey–Maestre, with whom Adalina deJesus-Morales was on brief for Manuel A. Iglesias.

Roberto O. Maldonado–Nieves, was on brief for Mutual Life Insurance Company of New York.

Before TORRUELLA, Chief Judge, CAMPBELL, Senior Circuit Judge, and STAHL, Circuit Judge.

LEVIN H. CAMPBELL, Senior Circuit Judge.

Manuel A. Iglesias appeals from the district court's grant of summary judgment on his discrimination and contract claims against his former employer, Mutual Life Insurance Company of New York ("MONY"). MONY appeals from the court's dismissal of its counterclaim for restitution of money that Iglesias obtained by submitting admittedly overstated expense reports. We affirm the judgment for MONY against Iglesias. We vacate the order dismissing MONY's counterclaim and remand the counterclaim with directions to dismiss the counterclaim without prejudice for want of jurisdiction.

I. *Iglesias's Claims.*

■ We review a grant of summary judgment *de novo,* taking the facts in the light most favorable to the non-moving party. *See One Nat'l Bank v. Antonellis,* 80 F.3d 606, 608 (1st Cir.1996). After considering the record, briefs, and oral arguments, we affirm the dismissal of Iglesias's discrimination and contract claims substantially for the reasons stated in the district court's memoranda and orders. We add only the following short discussion.

■ Regarding Iglesias's discrimination claims,[1] Iglesias received clear and unequivocal notice that he was terminated as MONY's San Juan Agency Manager on February 9, 1989, at the latest. On that date, MONY sent him a letter informing him that he would no longer be authorized to act as Agency Manager. In the context of the parties' prior discussions regarding Iglesias's retirement, the February 1989 letter put Iglesias on notice that he had been fired.[2] Iglesias did not file administrative charges with the Anti–Discrimination Division of the Puerto Rico Department of Labor until August 28, 1990, and his initial complaint in federal court was not filed until April 17, 1991. Igle-

---

1. Iglesias sued for discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (1994); the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* (1985); and Law 100 of June 30, 1959, P.R. Law Ann. tit. 29, § 146 (1985).

2. According to Iglesias, a MONY manager had told him in 1988: "Either you retire or I'll retire you." At trial, Iglesias said that he did not respond to the February 9, 1989 letter from MONY because he "felt humiliated by what [MONY] was offering me because [MONY] was firing me." Thus, Iglesias was aware that he was being terminated in early 1989.

sias's action for discrimination was, therefore, barred by the applicable statutes of limitations. *See* 42 U.S.C. § 2000e–5(e) (establishing a 300–day limitation period for actions under Title VII that were first presented to an administrative agency); 29 U.S.C. § 626(d)(2) (setting a 300–day limitation period for actions under the ADEA that were first brought before a state authority); *Olmo v. Young & Rubicam,* 110 D.P.R. 740, 745, 1981 WL 176523 (P.R.1981) (applying a one year limitation period to claims brought under Law 100). The Puerto Rico Supreme Court's decision in *Vélez Rodríguez v. Pueblo Int'l, Inc.,* 94 JTS 37 (P.R. March 18, 1994) does not apply to Iglesias's claims for the reasons stated in the district court's memorandum.

▮ Regarding Iglesias's contract claims, MONY's employment contract with Iglesias did not limit MONY's ability to withdraw products from the Puerto Rico market. Iglesias argues that the provision in the contract authorizing him to "solicit applications for insurance in MONY of the types of insurance which MONY is issuing" created a vested right that prevented MONY from ever altering its policy offerings in Puerto Rico. We recognize that "when the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." *Coyne v. Taber Partners I,* 53 F.3d 454, 460 (1st Cir.1995). We need not indulge a nonmoving party's inferences, however, if they do not "flow rationally from the underlying facts." *Rubinovitz v. Rogato,* 60 F.3d 906, 911 (1st Cir. 1995).

▮ No reasonable jury could agree with Iglesias's reading of his contract. The plain language of the provision purports only to authorize Iglesias to sell MONY's product line, it does not guarantee stability of that line. MONY is a national company that deals with many agents in diverse geographic areas. To interpret this contract provision so as to grant each of those agents the power to control which products MONY offers within that particular agent's jurisdiction would give Iglesias and other agents the power to veto policy decisions made by MONY's upper

management at the company's national headquarters. This would flip the employment relationship between MONY and its agents on its head. Further, each of Iglesias's contracts contained clauses in which MONY reserved the right to change the contract. The district court's grant of summary judgment was entirely appropriate.

## II. *MONY's Counterclaim.*

MONY reimbursed Iglesias for expenses that he incurred as a result of his professional activities. To supplement his income, Iglesias admits that he "padded" his expense reimbursement requests from 1981 to 1988. MONY first learned of Iglesias's practice of overstating his expenses in 1987. At that time, MONY took no legal action against Iglesias. Instead, after notifying him that his conduct conflicted with company policy, MONY requested that he submit accurate reports in the future. Subsequently, Iglesias brought the present action against MONY for discrimination and breach of contract. On November 7, 1991, in the course of a deposition, Iglesias admitted that he had continued submitting exaggerated expense reports even after MONY's 1987 warning.

MONY tried to use the information obtained at the 1991 deposition in three ways. First, MONY questioned Iglesias about his expense reports during trial in an effort to impeach his credibility. Second, MONY attempted to raise the falsified expense requests as an affirmative defense to Iglesias's discrimination claims, arguing that they provided MONY with a valid non-discriminatory reason to terminate Iglesias. The court did not allow MONY to pursue this strategy because MONY learned of these improprieties only after it had terminated Iglesias.

Third, and more importantly for our purposes, MONY sought leave to amend its answer to add a counterclaim for restitution. On March 17, 1992, the magistrate judge granted MONY's request. For four years, the parties conducted discovery on the counterclaim. On August 6, 1996, Iglesias moved for dismissal of MONY's counterclaim arguing, *inter alia,* that it was barred by laches. On August 14, 1996, the district court dis-

missed the counterclaim as untimely. MONY now appeals from that dismissal.

■ Although neither of the parties has raised the issue, we have an obligation to inquire into our subject matter jurisdiction over MONY's counterclaim. *See Clark v. Paul Gray, Inc.,* 306 U.S. 583, 588, 59 S.Ct. 744, 83 L.Ed. 1001 (1939) (holding that although district court's jurisdiction had not been challenged, Court had duty to raise question of whether jurisdictional amount was involved). *See also White v. Gittens,* 121 F.3d 803, 806 (1st Cir.1997). Federal courts are courts of limited jurisdiction; a court may not address the merits until "after ... the court has assumed jurisdiction over the controversy." *Bell v. Hood,* 327 U.S. 678, 681, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *see also Steel Co. v. Citizens for a Better Environment,* —— U.S. ——, ——, 118 S.Ct. 1003, 1012, 140 L.Ed.2d 210 (1998) (stating that deciding the merits before confirming jurisdiction "carries the courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers"). Since MONY's counterclaim sounds in state law, a federal court may not hear it unless it falls within the ambit of supplemental jurisdiction or is supported by an independent jurisdictional basis. *See Toste Farm Corp. v. Hadbury, Inc.,* 70 F.3d 640, 646 (1st Cir.1995) (noting that a federal court has jurisdiction over a counterclaim only if it resides within the court's supplemental jurisdiction or is supported by an independent jurisdictional basis).

■ The parties appear to have assumed that MONY's counterclaim was within the court's supplemental jurisdiction. When considering supplemental jurisdiction, the nature of the counterclaim is crucial. Federal Rule of Civil Procedure 13 describes two types of counterclaims: compulsory and permissive. A compulsory counterclaim is one that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed.R.Civ.P. 13(a). All counterclaims that are not compulsory are permissive. *See* Fed.R.Civ.P. 13(b). Only compulsory counterclaims can rely upon supplemental jurisdiction; permissive counterclaims require their own jurisdictional basis.

■ The supplemental jurisdiction statute provides: "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Section 1367 incorporates the common law doctrines of pendent and ancillary jurisdiction. *See Penobscot Indian Nation v. Key Bank,* 112 F.3d 538, 563 (1st Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 297, 139 L.Ed.2d 229 (1997). Federal courts have ancillary jurisdiction over compulsory counterclaims. *See McCaffrey v. Rex Motor Transp., Inc.,* 672 F.2d 246, 248 (1st Cir.1982); 6 *Charles Alan Wright, Arthur R, Miller & Mary Kay Kane, Federal Practice & Procedure* § 1414, at 99 (2d ed.1990). Permissive counterclaims, however, do not fall within ancillary jurisdiction and therefore may not be heard in federal court unless supported by an independent basis of jurisdiction. *See McCaffrey,* 672 F.2d at 248; *Wright, Miller & Kane,* § 1422, at 169–70.

■ There are at least four tests to determine whether a counterclaim is compulsory or permissive:

1) Are the issues of fact and law raised by the claim and counterclaim largely the same?

2) Would res judicata bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule?

3) Will substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim?

4) Is there any logical relation between the claim and the counterclaim?

*McCaffrey,* 672 F.2d at 248 (quoting 6 *Wright , Miller & Kane, supra,* § 1410, at 42 [currently 52–57] )(internal quotation marks omitted). Of these tests, only the fourth— the "logical relation" test—could possibly encompass MONY's counterclaim. In *McCaffrey,* we adopted the Fifth Circuit's treatment of the logical relation test. Under this

approach, a claim qualifies as compulsory only if:

it arises out of the same aggregate of operative facts as the original claim in two senses: (1) that the same aggregate of operative facts serves as the basis of both claims; or (2) that the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant.

*McCaffrey*, 672 F.2d at 249 (quoting *Revere Copper & Brass, Inc. v. Aetna Cas. & Sur. Co.*, 426 F.2d 709, 715 (5th Cir.1970)).

■ Applying this standard, MONY's counterclaim is permissive. First, the aggregate of operative facts giving rise to Iglesias's claims is entirely different from the facts supporting MONY's counterclaim. Iglesias alleges that MONY removed its disability insurance product from the Puerto Rico market in 1981 for discriminatory reasons. That change in policy, he claims, led to his eventual termination, which therefore was also discriminatory. The evidence relevant to these claims includes the terms of Iglesias's employment contract and documentary, testimonial or other evidence concerning MONY's actions in Puerto Rico. By contrast, MONY's counterclaim is for restitution of monies that Iglesias wrongfully obtained from the company over the period from 1981 to 1988. The facts supporting the restitution claim include Iglesias's records and expense vouchers for travel and meals, his admissions during deposition, and documentary, testimonial or other evidence regarding MONY's reimbursement policies. Notwithstanding both claims arose during the same time period, they therefore rest on different sets of supporting facts.

Second, MONY's ability to recover restitution does not depend on the success or failure of Iglesias's claims. Iglesias has admitted that he overbilled his expenses to enhance his compensation. Although MONY discovered Iglesias's false reimbursement requests for 1988 in a deposition that was part of the present action, Iglesias's claims did not "activate" otherwise dormant claims. MONY could have sought reimbursement for its pay-

ments based on Iglesias's false expense reports prior to 1988 at any point. Even MONY's claim relating to 1988 expenses is not tied to the merits of the discrimination and contract claims. In other words, MONY's counterclaim bears no logical relation to the claims in the main action.

We conclude that MONY's counterclaim is permissive rather than compulsory, and is not supported by federal supplemental jurisdiction. We look, therefore, to whether it rests on an independent federal jurisdictional basis.

■ The only possible jurisdictional basis would be diversity of citizenship. While Iglesias and MONY are citizens of different states, MONY did not allege that its claim exceeded any specified sum, nor is its amount ascertainable from the record. *See* 28 U.S.C. § 1332(a) (1993) (limiting diversity jurisdiction to claims that exceed a certain amount-in-controversy). At the time that MONY asserted its counterclaim, the amount-in-controversy required was in excess of $50,000, exclusive of interest and costs.[3] The burden of alleging jurisdiction is on the party asserting the claim. *See Viqueira v. First Bank*, 140 F.3d 12, 16 (1st Cir.1998) (stating that "the proponent . . . must carry the burden of demonstrating the existence of federal jurisdiction").

■ Although "the sum claimed by the [proponent] controls if the claim is apparently made in good faith," *Saint Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288, 58 S.Ct. 586, 82 L.Ed. 845 (1938) (footnote omitted), MONY, as noted, has failed to allege that its counterclaim exceeds the required amount-in-controversy nor is there evidence in the record from which its value can reliably be determined as exceeding that amount. MONY stated merely that it was:

in the process of reviewing each and everyone [sic] of the expense reports submitted by Mr. Iglesias to determine what was the scope of this practice by Mr. Iglesias and the approximate amount of funds wrongfully taken by Mr. Iglesias from Mutual

---

**3.** After MONY asserted its counterclaim, § 1332(a) was amended to require an amount-in-

controversy greater than $75,000. *See* Pub.L. No. 104–317, § 205(a)(1) (1996).

through the scheme of false expense reports acknowledged by the plaintiff.

Later, MONY submitted a more detailed accounting of specific instances in which Iglesias alleged excessive or false mileage, but did not state the value of the wrongful claims. MONY noted that Iglesias had charged $48,500.87 in meal expenses between 1981 and 1988, but it did not indicate what portion of these claims was false or overstated.

■ In these circumstances—lacking MONY's allegation that the counterclaim meets the jurisdictional amount, and lacking facts of record indicative that this is so—we must conclude that the district court was without jurisdiction to proceed. We, therefore, remand the counterclaim with directions that it be dismissed for want of jurisdiction. *See* Fed.R.Civ.P. 12(h)(3)("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."). *See also United Food & Com. Workers Union v. CenterMark Properties Meriden Square, Inc.,* 30 F.3d 298, 306 (2d Cir.1994) (addressing for first time on appeal whether district court lacked subject matter jurisdiction and remanding for determination of whether amount in controversy requirement had been met).

We recognize that Iglesias never pointed out below the absence of a proper amount-in-controversy allegation, nor was the subject raised by anyone. Had it been raised, MONY might have been able to remedy the deficiency by amendment if it believed in good faith that its counterclaim exceeded the jurisdictional minimum. In these circumstances, the dismissal we now order shall be without prejudice to MONY's right, if it can do so in good faith, to amend the counterclaim within such time as the district court allows so as to allege a supportably proper jurisdictional amount.[4] If MONY can do so, the district court may lift the jurisdictional bar. *Cf. United Food,* 30 F.3d at 306. If that occurs, the court will be faced with whether to reinstate its previous dismissal

with prejudice for untimeliness. We comment briefly.

Because jurisdiction over the counterclaim has not been established, we are without authority to rule whether the district court's dismissal for untimeliness was proper. *Cf. Steel Co.,* —— U.S. at ——, 118 S.Ct. at 1012. The issue was, however, presented in this appeal and we believe it would be helpful if we were to state our initial impressions, recognizing their present non-binding character. MONY brought its counterclaim only four months after Iglesias's November 7, 1991 deposition revealing for the first time that he had continued to falsify his expenses even after similar improprieties were noted in 1987. In all the circumstances, it is not readily apparent why MONY should be thought tardy in bringing the counterclaim when it did.

■ Iglesias argues that the counterclaim is barred by laches. The equitable doctrine of laches allows a court to dismiss a claim "where a party's delay in bringing suit was (1) unreasonable, and (2) resulted in prejudice to the opposing party." *K-Mart Corp. v. Oriental Plaza, Inc.,* 875 F.2d 907, 911 (1st Cir.1989). Even if we were to find unreasonable delay within the period between 1987, when MONY first learned that Iglesias had been padding expenses, and 1992, when, after having warned Iglesias earlier, MONY asserted its counterclaim based on the subsequent defalcations, we fail to see how any of that delay prejudiced Iglesias. Indeed, such prejudice as there was appears to have worked the other way. The magistrate judge had granted permission to MONY to assert its counterclaim, and the parties thereafter conducted four years of discovery. MONY sifted through receipts for meals and business trips in an effort to reveal false claims. The court's dismissal after four years of discovery had been allowed seems to work a hardship on MONY. Given these equities, we would have serious questions as to the strength of Iglesias's laches argument.

*The judgment for MONY against Iglesias is affirmed. The order dismissing the coun-*

---

4. A cursory examination leaves it unclear that the applicable amount can be asserted in good faith, but we leave that issue to MONY and the district court in the first instance.

*terclaim for untimeliness is vacated and the counterclaim remanded with directions to dismiss the counterclaim without prejudice for want of jurisdiction.* Costs awarded to MONY on the appeal from the district court's grant of summary judgment; each party to bear its own costs on the appeal from the dismissal of the counterclaim.