**MARITIMES & NORTHEAST PIPELINE, L.L.C.,**
**Plaintiff,**

v.

**16.66 ACRES OF LAND, MORE OR LESS, IN THE CITY OF BREWER AND TOWNS OF EDDINGTON AND BRADLEY, COUNTY OF PENOBSCOT, STATE OF MAINE; Bangor Hydro–Electric Company; et al., Defendants.**

No. CIV. CV–99–112–B.

United States District Court,
D. Maine.

Oct. 27, 1999.

James T. Kilbreth, Verrill & Dana, Portland, ME, for Plaintiff.

Patricia M. Weathersby, Sanders & McDermott, Hampton, NH, for Defendant.

## ORDER and MEMORANDUM
## OF OPINION

BRODY, District Judge.

Plaintiff, Maritimes and Northeast Pipeline, L.L.C., ("Maritimes"), brings this action seeking condemnation under the Natural Gas Act, 15 U.S.C. §§ 717 *et seq.*, of approximately 16.66 acres owned by Defendant Bangor Hydro–Electric Company ("Bangor Hydro"). Defendant counterclaims alleging trespass based on Maritimes' failure to either obtain an easement from Bangor Hydro or seek condemnation of Bangor Hydro's easement interests in some 71 other properties.

Before the Court is Plaintiff's Motion to Dismiss the Defendant's Counterclaim. For the reasons discussed below, Plaintiff's Motion to Dismiss is GRANTED.

## I. BACKGROUND

On July 31, 1998, Maritimes was granted a Certificate of Public Convenience and Necessity by the Federal Energy Regulatory Commission ("FERC"). The certificate allows Maritimes to construct a gas pipeline extending from the Canadian border through Maine. Pursuant to the certificate issued under the Natural Gas Act, 15 U.S.C. §§ 717 *et seq.*, Maritimes may condemn properties to obtain the necessary permanent and temporary easements when it is unable to obtain these easements from the fee owners by agreement.

After failing to reach an agreement regarding the 16.66 acres named in this action, Maritimes moved to obtain the necessary easements on the property by condemning these 16.66 acres owned by Bangor Hydro (the "fee properties"). In their answer to this condemnation action, Bangor Hydro has asserted a trespass claim involving its interests in 71 other parcels on which it has easements (the "easement properties"). Because these 71 fee owners granted easements to Maritimes, these parcels have not proceeded to condemnation. Instead, Maritimes has relied on the express easements from the fee owners in constructing its pipeline.

Bangor Hydro asserts that the construction of Maritimes' pipeline on these 71 properties will "unreasonably and unlawfully interfere" with their preexisting easement interests. Therefore, they claim that this Court should grant "preliminary and permanent injunctions barring Maritimes from interfering with [Bangor Hydro]'s easement interests" on 71 properties on which Bangor Hydro has utility lines or, at least, the right to construct and maintain utility lines. Alternatively, they suggest Maritimes should move to condemn these 71 easements and provide them with just compensation.

## II. DISCUSSION

Maritimes seeks dismissal of this counterclaim based on three different arguments. First, they claim that this Court lacks subject matter jurisdiction over the counterclaim. *See* Fed. R. Civ. Pro 12(b)(1). Second, they argue that the counterclaim does not state a claim upon which relief can be granted under Rule 12(b)(6). They also contend that the counterclaim should be dismissed because the 71 landowners (the "landowners" or "fee owners") are indispensable parties whose joinder is not feasible. *See* Fed. R. Civ. Pro. 19(b).

In addressing these arguments, the Court must begin with the question of subject matter jurisdiction. If the Court lacks subject matter jurisdiction over the counterclaim, it lacks the authority to hear and decide the other claims on the merits. *See Northeast Erectors Ass'n of the BTEA v. Secretary of Labor, OSHA,* 62 F.3d 37, 39 (1st Cir.1995); *Miller v. George Arpin & Sons, Inc.,* 949 F.Supp. 961, 965 (D.R.I.1997) (both citing *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946)).

### A. Subject Matter Jurisdiction

#### 1. Standard Under Federal Rule of Civil Procedure 12(b)(1)

Federal courts are courts of limited jurisdiction and "federal jurisdiction may never be presumed." *Pejepscot Industrial Park, Inc. v. Maine Central Railroad Co.,* 59 F.Supp.2d 109, 112 (D.Me.1999). The party asserting the claim carries the burden of establishing subject matter jurisdiction. *See Viqueira v. First Bank,* 140 F.3d 12, 16 (1st Cir.1998); *see also Hoffman–La Roche Inc.*

*v. Genpharm, Inc.,* 50 F.Supp.2d 367, 372 (D.N.J.1999) (explaining that in the case of a counterclaim, the counterclaimant bears the burden of establishing subject matter jurisdiction). When deciding a motion to dismiss under Rule 12(b)(1), the Court must treat all well-pleaded facts as true and indulge all reasonable inferences in favor of the non-moving party. *See Aversa v. United States,* 99 F.3d 1200, 1209–10 (1st Cir.1996). The Court may consider other evidence submitted by the parties in determining subject matter jurisdiction. *See id.*

Since Maritimes is seeking dismissal of Bangor Hydro's trespass claim, Bangor Hydro has the burden of establishing subject matter jurisdiction for the counterclaim. The first step in determining subject matter jurisdiction of a counterclaim is determining whether the counterclaim is compulsory or permissive. *See* Fed. R. Civ. Pro. 13.

### 2. Compulsory Counterclaims

Rule 13(a) defines compulsory counterclaims as any claim "aris[ing] out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. Pro. 13(a). The First Circuit has laid out four tests to determine whether a counterclaim is compulsory. *See Iglesias v. Mutual Life Ins. Co. of New York,* 156 F.3d 237, 241 (1st Cir.1998), cert. denied, —— U.S. ——, 120 S.Ct. 45, 145 L.Ed.2d 41 (1999). The most liberal of these tests asks whether there is "any logical relation between the claim and the counterclaim." *Id.* In applying this test, the First Circuit has considered two separate questions. First, whether "the same aggregate of operative facts serves as the basis of both claims." *Id.* at 242 (citing *McCaffrey v. Rex Motor Transp., Inc.,* 672 F.2d 246, 248 (1st Cir.1982)). Second, whether "the aggregate core of facts upon which the original claim rests activates additional

legal rights in a party defendant that would otherwise remain dormant." *Id.*

Most recently, the First Circuit applied this test and concluded that an employer's counterclaim for reimbursement of money paid out on overstated expense reports was not a compulsory counterclaim when the action filed by the employee alleged discrimination and contract claims. *See id.* at 242. The First Circuit reached this conclusion despite the fact that the counterclaim involved the same parties and both claims arose during the same time period. *See id.*

■ Applying the First Circuit test in this case, the Court reaches the same conclusion: Bangor Hydro's counterclaim is not compulsory. Although Bangor Hydro argues that its counterclaim is "logically related" to the claim asserted by Maritimes, the counterclaim is, at most, logically related to Maritimes' pipeline project not Maritimes' claim in this case.

Maritimes' current claim is the right to condemn 16.66 acres owned by Bangor Hydro. Bangor Hydro counterclaims that it is entitled to keep Maritimes from entering 71 other properties on which it has electric utility easements.[1] This counterclaim cannot be said to arise out of the "same aggregate of operative facts" because it requires evidence regarding 71 other properties, including the examination and interpretation of hundreds of easement agreements that otherwise would be irrelevant to the condemnation of the 16.66 acres named in the caption of this case.

Additionally, Bangor Hydro's counterclaim was not activated when Maritimes brought this condemnation action and their right to secure full use of these 71 easements does not remain dormant if the Court refuses to exercise supplemental jurisdiction over the counterclaim. Bangor Hydro's counterclaim is a state common law claim based on tres-

---

1. Ordinarily, the assertion of a counterclaim in a condemnation action is not allowed. *See e.g., United States v. 1.58 Acres of Land,* 523 F.Supp. 120, 122 (D.Mass.1981); Wright, Miller & Marcus, *Federal Practice and Procedure* § 3048 (2d ed.1997). Since the party taking by eminent domain is most often the United States, this exclusion of counterclaims in condemnation actions often relies on sovereign immunity. *See*

*e.g., United States v. 6,321 Acres of Land,* 479 F.2d 404, 406–07 (1st Cir.1973). In this case, Maritimes as a private entity is granted the power to condemn under the Natural Gas Act pursuant to a FERC Certificate. *See* 15 U.S.C. § 717f(h). Consequently, the counterclaim cannot barred on the grounds of sovereign immunity.

pass. Bangor Hydro may bring an action in state court to protect their easement interests in these 71 properties. *See e.g., Northern Utilities v. South Portland*, 536 A.2d 1116, 1118 (Me.1988) (upholding a declaratory judgment preventing the construction of a sidewalk that would have caused significant inconvenience to plaintiff's pipeline easement); *Badger v. Hill*, 404 A.2d 222, 224 (Me.1979) (challenge by plaintiffs to construction of a dock that they claimed would have impaired effective use of their easement allowing them access to lake).

The Court does not find that Bangor Hydro's trespass claim arises out of the same operative facts or that this counterclaim was activated by Maritimes' claim and would have remained dormant but for this case. Therefore, Bangor Hydro's counterclaim is not logically related to Maritimes' claim and not compulsory. Because the Court may only assert supplemental jurisdiction over compulsory counterclaims, the Court cannot assert supplemental jurisdiction over Defendant's counterclaim. *See Iglesias*, 156 F.3d at 241.

### 3. Permissive Counterclaims

All counterclaims that are not found to be compulsory are considered permissive. *See* Fed. R. Civ. Pro. 13(b). Permissive counterclaims require an independent jurisdictional basis. *See Iglesias*, 156 F.3d at 242. Because the Court finds Bangor Hydro's claim to be permissive, an independent jurisdictional basis for the claim must be established for it to withstand a motion to dismiss.

Bangor Hydro's counterclaim is based on trespass. Therefore, it cannot be said to arise under the Constitution or any federal law. *See* 28 U.S.C. § 1331. Alternatively, Bangor Hydro might establish an independent jurisdictional basis for its permissive counterclaim by relying on diversity jurisdiction. *See* 28 U.S.C. § 1332. However, Bangor Hydro has not plead the necessary facts to establish diversity jurisdiction nor are all of the necessary facts ascertainable from the record before the Court. Specifically, while the existing parties are from different states, Bangor Hydro being from Maine and Maritimes being a limited liability corporation incorporated under the laws of Delaware

with a principal place of business in Boston, Massachusetts, Bangor Hydro has not plead, and the Court is not able to infer from the record, that the amount in controversy exceeds $75,000. Therefore, there is no independent jurisdictional basis for Bangor Hydro's permissive counterclaim and dismissal without prejudice is warranted. *See Iglesias*, 156 F.3d at 243 (dismissing without prejudice when amount-in-controversy could not be determined).

### B. Joinder

■ Because this jurisdictional error might be easily remedied by Bangor Hydro, the Court finds it is necessary to address the joinder argument raised by Maritimes. In its Motion to Dismiss, Maritimes asserts that the fee owners of these 71 properties are indispensable parties and that because the Court cannot join them it must dismiss Bangor Hydro's counterclaim.

### 1. Standard Under Federal Rule of Civil Procedure 19

Two steps are required in making a Rule 19 determination. First, the Court must determine whether the parties to be joined are necessary and whether their joinder is feasible. *See Pujol v. Shearson*, 877 F.2d 132, 134 (1st Cir.1989). A party is necessary (1) if the party's absence prevents the court from according complete relief "among those already parties," or (2) when the party "claims an interest relating to the subject of the action and ... disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest, or (ii) leave any ... persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations." Fed. R. Civ. Pro. 19(a).

Second, if a person is necessary party but their joinder is not feasible, the Court must use the four factors listed in Rule 19(b) to determine whether the action can proceed without the necessary party or whether "in equity and good conscience" the claim should

be dismissed.[2] *See Pujol v. Shearson,* 877 F.2d 132, 134 (1st Cir.1989). Rule 19(b) requires that the Court "examine[ ] whether a party is an essential part of the controversy before the court." *Travelers Indemnity Co. v. Dingwell,* 884 F.2d 629, 636 (1st Cir.1989). This examination must focus on the "practical likelihood of prejudice and subsequent litigation, rather than theoretical possibilit[ies]." Wright, Miller & Marcus, Federal Practice and Procedure § 1608 (2d ed.1997).

### 2. Necessary Parties

In its reply, Bangor Hydro does not object to the joinder of the landowners.[3] In fact, both parties appear to agree that the landowners are necessary parties. The Court agrees with the parties that the landowners are necessary parties. Specifically, the landowners undoubtedly have an interest in the land which is the subject of this claim. Disposition of the controversy between these two express easement holders in the absence of the landowners could impair the use of the land by the fee owners[4] or could subject Maritimes to the risk of having to pay Bangor Hydro to acquire an interest it has already paid the landowners to obtain.

Because some, and perhaps all, of the landowners are Maine residents, their joinder would destroy complete diversity, which is the Court's only basis for subject matter jurisdiction over the counterclaim. *See Acton Co. v. Bachman Foods, Inc.,* 668 F.2d 76, 78 ("diversity jurisdiction has long been interpreted to require complete diversity-op-posing parties may not be citizens of the same state"). Thus, under Rule 19(a), joinder of these necessary parties is not feasible.

### 3. Indispensable Parties

Proceeding to step two of the analysis, the Court further concludes that the landowners are not only necessary parties but also indispensable parties without whom the Court cannot proceed in deciding this trespass claim. This conclusion flows from consideration of the four factors laid out in Rule 19(b). The four factors as described by the First Circuit and applied to this case are: (1) Bangor Hydro's "interest in having a forum," (2) Maritimes' "interest in avoiding multiple litigation, inconsistent relief, or sole responsibility for a liability it shares with another," (3) the landowners' interest in preventing impairment of their rights in a proceeding in which they are not parties, and (4) the public interest in "complete, consistent, and efficient settlement of controversies." *See Travelers Indemnity Co. v. Dingwell,* 884 F.2d 629, 635 (1st Cir.1989) (citing *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 111, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968)). The Court will address each of these factors in turn.

The first factor, Bangor Hydro's interest in having a forum, does not weigh in favor of the Court proceeding with the parties before it. If the Court dismisses this counterclaim, Bangor Hydro may pursue its real property claim in state court with all interested parties, including the landowners. Thus, this

---

**2.** Rule 19(b) describes the four factors as follows:

> [F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.
>
> Fed. R. Civ. Pro. 19(b).

**3.** *See* Def.'s Reply to P.'s Mot. to Dismiss at 16. (stating, in part, that "the fee owners of the properties in which Bangor Hydro owns an easement interest may be joined"). Because Bangor Hydro relies on a supplemental jurisdiction argu-ment, the Court reads their joinder proposal as suggesting that the landowners are necessary parties whose joinder is feasible under Rule 19(a).

**4.** *See Correlative rights of dominant and servient owners in right of way for electric lines,* 6 A.L.R.2d 205, 211–12 (1948 & Supp.1997), and *Correlative rights of dominant and servient owners in right of way for pipeline,* 28 A.L.R.2d 626, 634 (1953 & Supp.1997) (both explaining that the landowner retains fee and that loss of fee owners' rights in the land is correlative with those gained by the easement holder). *See also* Knud E. Hermansen & Donald R. Richards, *Maine Roads and Easements,* 48 Me. L.Rev. 197, 214 (explaining that "servient owner cannot grant to others that which she has no right to exercise herself").

factor weighs in favor of dismissal so that the action could proceed in a forum where all parties may be heard.

Maritimes' interest in avoiding multiple litigation and inconsistent relief similarly weighs in favor of dismissal. In their motion, Maritimes suggests that a ruling for Bangor Hydro on this counterclaim would entitle them to restitution from the landowners, whom Maritimes has already paid for the easements. Such restitution would entail "initiat[ing] a separate action to recover these monies." (P.'s Mot. to Dismiss at 14.) Thus, if the Court were to find for Bangor Hydro on its counterclaim and fashion a remedy consisting only of monetary damages, the practical result could be additional litigation between Maritimes and the landowners.

The interests of the landowners clearly support dismissing this claim. Although the lands in question are now burdened with both a utility easement and a pipeline easement, the landowners retain all residual rights in the properties which are the subject of this counterclaim. By their actions, it appears that despite Bangor Hydro's easement, the landowners believed they residually retained the right to lay pipeline underground, or grant that right to others via a secondary easement. Because a decision on the merits could limit the residual rights of the landowners or subject them to claims for restitution from Maritimes, the landowners have interests in the resolution of this claim that could be prejudiced if the Court proceeds without them.

These landowner interests are not currently represented by either of the parties. Both Maritimes and Bangor Hydro have an interest in insuring that their individual easements are interpreted as broadly as possible. Comparatively, the landowners' interest is in

a narrow reading of both easements.[5] Because the fee owner retains all rights in the property not granted in the easement and a determination of the extent of the easement can involve a determination of the intent of the parties to the easement,[6] a decision on the merits of this counterclaim will affect the rights of the landowners and involve a determination of their intent as grantors. Under these circumstances, the Court cannot conceive, and the parties have not suggested, a way to frame the relief available under the counterclaim so at to avoid prejudicing the interest of the fee owners.

The final interest to be weighed under Rule 19(b) is that of the courts and the general public in ensuring adequate relief as well as efficient settlement of controversies. Considering all of the interests involved, the most fair and efficient settlement of this claim requires the landowners to be joined as parties. This determination is not altered by Bangor Hydro's concern that, if dismissed, the counterclaim would be heard in "multiple states courts" leading to different and disparate results for Maritimes. (D.'s Reply to P.'s Mot. to Dismiss at 15.) Maritimes can ultimately secure a uniform result in the face of any state court judgment on this claim because its FERC Certificate allows condemnation of property to obtain the necessary easements and this condemnation may proceed in federal or state court.[7] See 15 U.S.C. § 717f(h). Additionally, Maritimes does not appear to share this concern since it has asserted in its motion that "Bangor Hydro is free to pursue injunctive relief in the appropriate state forum." (P.'s Mot. to Dismiss at 16.)

After consideration of all of the relevant 19(b) factors, the Court must decide whether "in equity and good conscience" it can decide this claim relating to real property without

---

5. To this end, the Court would likely find that these landowners were entitled to intervention as a right under Rule 24(a) because their interests are not "adequately represented." See Dingwell, 884 F.2d at 636 (explaining that "ability to intervene" can be considered in making a indispensability determination although it does not control such a determination).

6. See Fine Line, Inc. v. Blake, 677 A.2d 1061, 1063–64 (1996) (explaining that the scope of a conveyed easement interest is determined from

the language of the easement or, if ambiguous, from extrinsic evidence of the "objectively manifested intentions of the parties in light if circumstances in existence") (citations omitted).

7. Condemnation would only be necessary if a court were to find that Maritimes' construction in accordance with its express easement did, in fact, interfere with the express easement held by Bangor Hydro.

the participation of the fee owners of the properties. The Court concludes that Bangor Hydro's claim essentially asserts that, because of Bangor Hydro's preexisting utility easement, the landowners did not retain the right to grant pipeline easements in exchange for monetary compensation. The landowners are indispensable parties to this claim.[8]

Therefore, Maritimes' Motion to Dismiss the Counterclaim is GRANTED.

*SO ORDERED.*

---

8. Because the Court dismisses on the basis of Rule 12(b)(1) and Rule 19(b), it does not reach the merits of Bangor Hydro's asserted claim.