# United States Court of Appeals
## For the First Circuit

No. 23-1060

KRESS STORES OF PUERTO RICO, INC.; J.M.J. APPLIANCES
CORPORATION; VALIJA GITANA, INC.; HUMBERTO VIDAL, INC.; and
ALMACENES KRESS DE CAYEY, INC.,

Plaintiffs, Appellants,

J. PICA Y CIA, INC., d/b/a Capri; ANTONIO BAYON, d/b/a Tienda
Junelba; and ELBA CASIANO, d/b/a Tienda Junelba,

Plaintiffs,

v.

WAL-MART PUERTO RICO, INC., and COSTCO WHOLESALE CORPORATION,

Defendants, Appellees,

WALGREEN OF PUERTO RICO, INC., and PUERTO RICO CVS PHARMACY,
LLC,

Defendants.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. William G. Young,* U.S. District Judge]

---

Before

Montecalvo, Hamilton,** and Rikelman,
Circuit Judges.

---

* Of the District of Massachusetts, sitting by designation.

** Of the Seventh Circuit, sitting by designation.

Gretchen L. Alvarado-González, with whom Luis N. Saldaña-Román, Fernando Sabater-Clavell, and Saldaña, Carvajal & Vélez-Rivé, PSC were on brief, for appellants.

Salvador J. Antonetti-Stutts, with whom Ubaldo M. Fernández Barrera, Laura E. Díaz González, and O'Neill & Borges LLC were on brief, for appellee Costco Wholesale Corporation.

Paul J. Berks, with whom Suyash Agrawal, Schuyler C. Davis, and Massey & Gail LLP were on brief, for appellee Wal-Mart Puerto Rico, Inc.

November 12, 2024

**PER CURIAM**.  On the merits, this appeal presents unfair competition claims brought by local Puerto Rico merchants against major big-box retailers in Puerto Rico based on events during the COVID-19 pandemic.  Plaintiffs-Appellants allege that Defendants-Appellees Costco Wholesale Corp. and Wal-Mart Puerto Rico, Inc., failed to comply with the Governor's executive orders limiting retail sales for 72 days to only essential goods, thus violating what plaintiffs say were defendants' duties of fair competition under Puerto Rico law.  The executive orders required most brick-and-mortar retailers to close but exempted some "essential" retailers including supermarkets and pharmacies.  Because Wal-Mart and Costco qualified as supermarkets, they remained open.  They continued to offer nearly all their merchandise to the public, including what plaintiffs have alleged were "non-essential" goods.

Plaintiffs' theory is that defendants took advantage of the closure orders to sell non-essential goods, which plaintiffs say violated the executive orders and breached a duty to avoid unfair competition, causing defendants to capture sales that otherwise would have gone to the local retailers.  The executive orders remained in effect from March 15 to May 25, 2020.  The local retailer plaintiffs seek damages for lost sales.

The plaintiffs filed this case as a putative class action in Puerto Rico's Court of First Instance.  Costco, the only non-local defendant, removed the case to federal district court

under the Class Action Fairness Act, also known as "CAFA," 28 U.S.C. § 1332(d)(2). Costco immediately moved to sever the claims against it, but the district court denied that motion.

The plaintiffs moved for remand, arguing on several grounds that federal subject-matter jurisdiction was lacking under CAFA. The district court denied that motion as well. Defendants then moved to dismiss for failure to state a claim, and only plaintiffs' unfair competition claim survived. Plaintiffs then moved for class certification on that claim, which the district court denied. Finally, the district court granted summary judgment for defendants on the lone remaining claim, finding that the executive orders did not create an enforceable duty on the part of Costco and Wal-Mart.

We resolve the appeal on jurisdictional grounds. First, we join other circuits in holding that CAFA jurisdiction is not lost when a district court denies class certification. Second, we hold that CAFA's "home state" exception in 28 U.S.C. § 1332(d)(4)(B) does not apply here because a non-local defendant (Costco) was a "primary" defendant. Third, however, we hold that CAFA's "local controversy" exception in § 1332(d)(4)(A)(i)(II)(bb) applies because, among other conditions, alleged conduct of a local defendant (Wal-Mart Puerto Rico) "forms a significant basis for the claims asserted by the proposed plaintiff class." We also conclude that the district court did not abuse its discretion by

denying Costco's motion to sever, so the entire case belongs in the Puerto Rico courts where plaintiffs filed it.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Undisputed Facts

On March 12, 2020, the Governor of Puerto Rico declared a state of emergency because of the COVID-19 pandemic. On March 15, the Governor issued the first of four executive orders requiring businesses to close and residents to stay at home to protect public health. The last of the four orders remained in force until May 25, 2020, so they were in effect for a total of 72 days.

The executive orders required most businesses to close but exempted certain categories of retailers, including pharmacies and supermarkets. The orders also permitted Puerto Rico residents to leave their homes only for specified purposes, including "[p]urchasing food, pharmaceutical, and basic necessity products," alternatively phrased as "to acquire food, pharmaceutical products, and essential supplies." None of the orders further defined "basic necessity products" or "essential supplies." Each executive order also included a provision entitled "Non-Creation of Enforceable Rights" stating:

> This Executive Order is not intended to create any rights, substantive or procedural, enforceable at law or equity, by any person or entity, in any matter, civil, criminal, or administrative, against the Government of

- 5 -

Puerto Rico or its agencies, officials, employees, or any other person.

Plaintiffs are local retailers in Puerto Rico. They were among the businesses that closed for the 72 days the executive orders remained in effect. Defendants Wal-Mart and Costco were not required to close because both sold essential supplies. Wal-Mart included both a supermarket and a pharmacy, and Costco included a supermarket. Both Wal-Mart and Costco remained open during the entire 72 days the executive orders were in place. Wal-Mart continued to sell its full array of merchandise. Costco limited the categories of products it sold, but it consistently maintained that the terms of the executive order did not clearly require it to do so.

After the first executive order was issued, Wal-Mart and Costco sought clarification from Puerto Rico officials as to what merchandise they could and could not sell, but they did not receive responses as to most categories of merchandise. Puerto Rico police and compliance officials from the Department of Consumer Affairs visited Wal-Mart regularly while the executive orders were in effect. The government of Puerto Rico never directed Wal-Mart or Costco to stop any of their sales, never suggested that they might be breaking the law, and never brought any enforcement action against them.

## B. Procedural History

On August 6, 2020, plaintiffs filed a putative class action complaint in Puerto Rico's Court of First Instance, alleging that defendants Wal-Mart, Costco, Walgreens, and CVS leveraged their status as exempt retailers to sell non-essential goods while the executive orders were in place.[1] Plaintiffs alleged these sales violated duties defendants owed to refrain from unfair competition against local retailers like plaintiffs. Plaintiffs alleged that defendants sold non-essential items like clothes, shoes, televisions, and appliances in violation of the executive orders. Plaintiffs argued that defendants' sales of non-essential items while plaintiffs were ordered not to do so amounted to unfair competition. Plaintiffs sought damages from Wal-Mart and Costco for the income plaintiffs say they and other local retailers would have received during the 72 days of the executive orders based on claims of unfair competition, unjust enrichment, and equity.

On September 8, 2020, Costco removed the case to federal court, invoking jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The same day, Costco moved to sever the claims against it from the claims against all other defendants under Federal Rules of Civil Procedure 20(a) and 21. Costco

---

[1] Two of the three local defendants, Walgreen of Puerto Rico, Inc., and Puerto Rico CVS Pharmacy, LLC, were later dismissed from the case and are not parties to this appeal.

asserted that the local defendants (Wal-Mart, Walgreens, and CVS) had been misjoined in violation of the permissive joinder rule. Costco asked the district court to sever the claims against all misjoined defendants under Rule 21 while retaining jurisdiction over the claims against Costco, for which diversity and CAFA jurisdiction were available. Some months later, in a minute order on June 1, 2021, the district court denied Costco's motion to sever, without prejudice to renewal but also without explanation.

After Costco's removal to federal court, plaintiffs moved to remand, arguing that two CAFA exceptions independently barred federal jurisdiction: the "home state" exception in 28 U.S.C. § 1332(d)(4)(B) and the "local controversy" exception in § 1332(d)(4)(A)(i)(II)(bb). The district court ruled that neither exception applied. Kress Stores of Puerto Rico, Inc. v. Wal-Mart Puerto Rico, Inc., 2021 WL 2912436, at *3–5 (D.P.R. July 9, 2021). The court recognized that the home state exception applies only when all "primary" defendants are local. Id. at *2–3 (citing Singh v. American Honda Financial Corp., 925 F.3d 1053, 1068 (9th Cir. 2019)). The court found that Costco, a non-local defendant, was "clearly a primary defendant," so it held the home state exception did not apply. Id. at *3. The court then held that the local controversy exception did not apply because plaintiffs failed to show that "the conduct of a local defendant is a 'significant basis'" of their claims. Id. at *4. Instead, the plaintiffs had

- 8 -

alleged identical and undifferentiated wrongful conduct by each defendant, including Costco, the non-local defendant: "all four Megastore[s] are alleged to have sold prohibited articles." Id. at *5.

After the district court denied remand, the defendants moved to dismiss plaintiffs' claims on the merits. The court dismissed the claims for unjust enrichment and equity on the pleadings, and plaintiffs have not argued these theories on appeal. Id. at *5, 9-10. The district court then denied class certification on plaintiffs' remaining unfair competition claims. Kress Stores of Puerto Rico, Inc. v. Wal-Mart Puerto Rico, Inc., 573 F. Supp. 3d 604, 607 (D.P.R. 2021). Following the denial of class certification, plaintiffs renewed their motion to remand the case to the Puerto Rico courts, arguing that the denial of class certification eliminated the district court's jurisdiction under CAFA. The district court denied plaintiffs' renewed motion and retained jurisdiction over the case.

Wal-Mart and Costco then moved for summary judgment on the plaintiffs' only remaining claim, for unfair competition. The district court granted summary judgment for Wal-Mart and Costco on the unfair competition claim. The court held that exempt retailers had no duty under the executive orders or Puerto Rico's unfair competition law to refrain from selling certain merchandise. The

court entered judgment in favor of Wal-Mart and Costco and denied plaintiffs' motion for reconsideration.  This appeal followed.

## II.  JURISDICTION UNDER CAFA

The existence of federal subject-matter jurisdiction under CAFA is a question of law subject to de novo review.  Amoche v. Guarantee Trust Life Insurance Co., 556 F.3d 41, 48 (1st Cir. 2009) (citing Lowery v. Alabama Power Co., 483 F.3d 1184, 1193 (11th Cir. 2007)).  The district court resolved no factual disputes relevant to jurisdiction, so we review de novo the district court's CAFA holdings.  See id.

The plaintiffs raise three distinct jurisdictional issues.  Plaintiffs argue first that the district court erred in retaining jurisdiction under CAFA after denying class certification.  Plaintiffs argue second that CAFA's home state exception applies and third that its local controversy exception applies.  We address plaintiffs' arguments in that order.

### A.  Jurisdiction After Denial of Class Certification

CAFA provides that its grant of federal jurisdiction "shall apply to any class action before or after the entry of a class certification order by the court with respect to that action."  28 U.S.C. § 1332(d)(8).  Plaintiffs argue that even if CAFA jurisdiction was proper when the case was filed in or removed to federal court, CAFA does not extend jurisdiction to federal courts after a denial of class certification.

- 10 -

This is a question of first impression for this circuit. See Wilkins v. Genzyme Corp., 93 F.4th 33, 43 (1st Cir. 2024) (citing College of Dental Surgeons of Puerto Rico v. Conn. Gen. Life Insurance Co., 585 F.3d 33, 42 (1st Cir. 2009) (expressing "no opinion" on issue)). In approaching such a question of statutory interpretation, we start of course with the statutory text, while keeping in mind that the larger statutory context and structure often provide useful indicators of legislative intent. E.g., City of Providence v. Barr, 954 F.3d 23, 31 (1st Cir. 2020). Here, the key language in CAFA — "shall apply to any class action before or after the entry of a class certification order" — does not indicate that jurisdiction is affected by whether the district court grants or denies class certification. The statutory text instead signals clearly that CAFA jurisdiction, when properly invoked, continues to apply regardless whether the court grants or denies class certification.

All other circuits that have decided the question interpret CAFA as requiring federal courts to retain proper CAFA jurisdiction after denying certification. E.g., F5 Capital v. Pappas, 856 F.3d 61, 76 (2d Cir. 2017) ("We . . . must decide whether district courts may retain jurisdiction over state-law claims with minimally diverse parties where the class-action component of the complaint is dismissed after the case is removed

- 11 -

to federal court.  We conclude that they may.").[2]  The Third Circuit

started with the statutory text:

> District courts have "original jurisdiction"
> over "class actions," 28 U.S.C. § 1332(d)(2),
> which the statute defines as "civil actions
> filed under Rule 23 . . . or a similar State
> statute or rule of judicial procedure
> authorizing an action to be brought . . . as
> a class action," id. § 1332(d)(1)(B) (emphasis
> added).  This conferral of jurisdiction
> plainly encompasses a suit like [plaintiffs'],
> which was "filed under Rule 23,"
> notwithstanding its eventual failure to become
> certified under Rule 23.  See Metz v. Unizan
> Bank, 649 F.3d 492, 500 (6th Cir. 2011) ("The
> 'filed under' language shows that it is the
> time of filing that matters for determining
> jurisdiction under CAFA.");  Cunningham
> Charter Corp. v. Learjet, Inc., 592 F.3d 805,
> 806 (7th Cir. 2010) (noting that
> § 1332(d)(1)(B) "defines class action as a
> suit filed under a statute or rule authorizing
> class actions, even though many such suits
> cannot be maintained as class actions because
> the judge refuses to certify a class").
> Indeed, "[h]ad Congress intended that a
> properly removed class action be remanded if
> a class is not eventually certified, it could
> have said so."  United Steel, Paper &
> Forestry, Rubber, Mfg., Energy, Allied Indus.

---

[2] Accord, Coba v. Ford Motor Co., 932 F.3d 114, 118-20 (3d Cir. 2019); Metz v. Unizan Bank, 649 F.3d 492, 500-01 (6th Cir. 2011); Cunningham Charter Corp. v. Learjet, Inc., 592 F.3d 805, 806-07 (7th Cir. 2010); Buetow v. A.L.S. Enters., Inc., 650 F.3d 1178, 1182 n.2 (8th Cir. 2011); United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co., 602 F.3d 1087, 1091-92 (9th Cir. 2010); Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1268 n.12 (11th Cir. 2009); see also Louisiana v. American Nat'l Property & Casualty Co., 746 F.3d 633, 635 (5th Cir. 2014) (CAFA jurisdiction extends to individual cases voluntarily severed out of class action by plaintiffs "because at the time of removal CAFA supplied federal subject matter jurisdiction" over original class action).

& Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co., 602 F.3d 1087, 1091 (9th Cir. 2010).

> True, § 1332(d)(8) states that CAFA "shall apply to any class action before or after the entry of a class certification order by the court with respect to that action," but, as the Seventh Circuit has aptly noted, that subsection refers to "a" certification order, not "the" certification order, and the former connotes an indefinite expectation that a certification order may issue. Cunningham, 592 F.3d at 806 (explaining that subsection (d)(8) at most suggests that a class "may be certified eventually" (emphasis added)). Moreover, unlike subsection (d)(2), subsection (d)(8) omits reference to "jurisdiction," indicating it pertains not to the scope of jurisdiction conferred by the statute, but to the timing of certification in relation to removal. See id.

Coba v. Ford Motor Co., 932 F.3d 114, 119 (3d Cir. 2019) (cleaned up).

This reading of CAFA's text fits well with more general jurisdictional principles. As the Second Circuit reasoned,

> the Supreme Court has consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events. At the time of removal, [plaintiff's] complaint contained a class-action claim that met CAFA's other jurisdictional requirements, including a $5 million amount in controversy and minimal diversity. It therefore follows that the later failure of the class claim did not divest the district court of subject matter jurisdiction because CAFA anchored jurisdiction at the time of removal.

F5 Capital, 856 F.3d at 76 (internal quotations, citations, and footnote omitted).

Further, because class certification may be revisited both in the district court and on appeal (including interlocutory appeals), plaintiffs' theory would cause jurisdiction to bounce back and forth between federal and state courts, perhaps several times. Suppose, for example, that a federal district court denied class certification and remanded to state court under plaintiffs' theory, and the state courts then granted class certification. Could a defendant then remove again? And upon return to federal court, suppose the district court or circuit court found class certification erroneous and decertified the class. Would the case need to be remanded to state court again?

That confusing and unseemly prospect is not required, or even suggested, by CAFA's text. It would also tend to undermine the core purpose of CAFA, "providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction." Class Action Fairness Act of 2005, Pub. L. No. 109-2, § 2(b), 119 Stat. 4, 5 (enacted purposes of Act); see also Cunningham, 592 F.3d at 807 ("Behind the principle that jurisdiction once obtained normally is secure is a desire to minimize expense and delay. If at all possible, therefore, a case should stay in the system that first acquired jurisdiction. It

- 14 -

should not be shunted between court systems; litigation is not ping-pong.").

Consistent with the statutory text, we agree with the uniform rule among the circuits. If jurisdiction is otherwise proper under CAFA when the action is filed in or removed to federal court, district courts retain CAFA jurisdiction after denying a motion for class certification. The district court here did not err by exercising jurisdiction under CAFA after it denied class certification.

### B. CAFA'S Exceptions

Plaintiffs argue next that CAFA's "home state" exception and "local controversy" exception both independently bar federal jurisdiction over their case. We address each exception in turn.

### 1. The Home State Exception

CAFA's home state exception provides: "A district court shall decline to exercise jurisdiction [over a class action in which] two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). Again, we begin with the statutory text. E.g., City of Providence, 954 F.3d at 31.

The first requirement for plaintiffs' citizenship is satisfied here. The proposed plaintiff class was limited to "legal and natural persons who reside and have businesses throughout

- 15 -

Puerto Rico."  For the reasons we explain below, the second requirement is not met here because "the primary defendants" are not all citizens of Puerto Rico.  The plural phrase in the statutory text — "the primary defendants" — signals that the exception requires that all primary defendants be citizens of the forum state.

Plaintiffs originally sued three Puerto Rico citizens, Wal-Mart Puerto Rico, Inc., Walgreen of Puerto Rico, Inc., and Puerto Rico CVS Pharmacy, LLC.  They also sued Costco Wholesale Corporation, which is not a citizen of Puerto Rico.  The district court held that plaintiffs' allegations had rendered Costco a "primary" defendant in this case.  Because not all the primary defendants were local, the district court found that the home state exception did not bar jurisdiction.  We agree.

CAFA does not define "primary" defendants in statutory text, and this appeal presents a question of first impression in this circuit.  Other courts have used different language to describe when a defendant is "primary."  "Some courts have embraced the definition of primary to mean direct and construed the words 'primary defendants' to capture those defendants who are directly liable to the proposed class, as opposed to being vicariously or secondarily liable based upon theories of contribution or indemnification." Vodenichar v. Halcon Energy Props., Inc., 733 F.3d 497, 504 (3d Cir. 2013) (collecting cases).  Other courts

- 16 -

have relied on complaints to identify which defendants are "expected to sustain the greatest loss if liability were found." Id. at 505.  Combining these approaches, the Ninth Circuit has explained that

> a court analyzing whether a defendant is a "primary defendant" for purposes of CAFA's home state exception should first assume that all defendants will be found liable.  The court should then consider whether the defendant is sued directly or alleged to be directly responsible for the harm to the proposed class or classes, as opposed to being vicariously or secondarily liable.  The court should also consider the defendant's potential exposure to the class relative to the exposure of other defendants.  Courts should not treat these considerations as exhaustive or apply them mechanistically.  The inquiry is whether a defendant is a "'principal,' 'fundamental', or 'direct'" defendant.  Finally, we agree that "by using the word 'the' before the words 'primary defendants' rather than the word 'a,' CAFA requires remand under the home state exception only if all primary defendants are citizens of" the alleged home state.  It is insufficient that only some of the primary defendants are citizens of that state.

Singh v. American Honda Finance Corp., 925 F.3d 1053, 1068 (9th Cir. 2019) (brackets and citations omitted).[3]

---

[3] This approach is supported by CAFA's legislative history, which indicates that Congress chose the phrase "the primary defendants" to allow flexible, pragmatic application.  See Hunter v. City of Montgomery, 859 F.3d 1329, 1336 (11th Cir. 2017).  The Senate Judiciary Committee report on CAFA explained:

> The Committee intends that "primary defendants" be interpreted to reach those

Applying that test to this case, the district court correctly found that Costco is a primary defendant. Kress Stores, 2021 WL 2912436, at *3. First, "the complaint concerns the direct and personal conduct of Costco, as opposed to Costco's vicarious or secondary liability." Id. Plaintiffs do not dispute this point on appeal. Second, as for comparable exposure to liability, the plaintiffs had "failed to show that Costco is not a primary defendant." Id. Plaintiffs bear the burden on this issue. In re

> defendants who are the real "targets" of the lawsuit — i.e., the defendants that would be expected to incur most of the loss if liability is found. Thus, the term "primary defendants" should include any person who has substantial exposure to significant portions of the proposed class in the action, particularly any defendant that is allegedly liable to the vast majority of the members of the proposed classes (as opposed to simply a few individual class members).

Id. (quoting S. Rep. No. 109-14, at 43 (2005) (alterations omitted). We recognize that the committee report was issued ten days after enactment, which certainly weakens its value for "divining legislative intent." Blockbuster, Inc. v. Galeno, 472 F.3d 53, 58 (2d Cir. 2006). We also recognize, however, that CAFA was the product of an unusually long legislative process and was the subject of a finely balanced set of compromises. In re Hannaford Bros. Co. Customer Data Security Breach Litig., 564 F.3d 75, 80 (1st Cir. 2009) ("Our job [in interpreting CAFA] is to effectuate the intent expressed in the plain language Congress has chosen, not to effectuate purported policy choices regardless of language."); see also Schutte v. Ciox Health, LLC, 28 F.4th 850, 858-59 (7th Cir. 2022) (interpreting CAFA exceptions; "courts should not put a thumb on the scale in either direction but should try to respect the compromises struck in Congress") (citing S. Rep. No. 109-14).

Hannaford Bros. Co. Customer Data Security Breach Litig., 564 F.3d 75, 78 (1st Cir. 2009).

To revive the home state exception on appeal, plaintiffs argue only that they believe Costco's potential liability is about $65 million, while Wal-Mart's potential liability is more than $265 million. Plaintiffs cite testimony from their expert witness on this point. This argument fails. It assumes incorrectly that only one defendant, the one with the single greatest exposure, can be "primary." The statutory text makes clear that more than one defendant can be "primary" within the meaning of 28 U.S.C. § 1332(d)(4)(B), even under the comparable-liability-exposure approach. The home state exception specifically contemplates "primary defendants," plural. Id. (emphasis added). Case law also rejects plaintiffs' assumption. To determine whether a defendant is "primary," courts "look at the allegations to identify the defendants expected to sustain the greatest loss if liability were found, and whether such defendants have substantial exposure to significant portions of the proposed class," again plural. Vodenichar, 733 F.3d at 505 (internal quotations, citations, and footnote omitted; emphases on plurals added).

Plaintiffs alleged that all class members were likely to be adversely affected by Costco's sales of non-essential goods while the executive orders were in effect. As plaintiffs themselves note, Costco could face direct liability to class

- 19 -

members on the order of tens of millions of dollars, which would surely be a substantial loss.  See id.  We agree with the district court that these plaintiffs failed to show that Costco is not a "primary" defendant within the meaning of 28 U.S.C. § 1332(d)(4)(B).  Because one of the "primary defendants" in this suit is not a citizen of Puerto Rico, federal subject-matter jurisdiction is not barred by CAFA's home state exception.

## 2.    The Local Controversy Exception

The district court also found that CAFA's "local controversy" exception, 28 U.S.C. § 1332(d)(4)(A), does not apply to bar jurisdiction in this case.  The local controversy exception requires federal courts to "decline to exercise jurisdiction . . . over a class action in which," among other conditions, a local defendant's "alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class."  28 U.S.C. § 1332(d)(4)(A)(i)(II)(bb).[4]  Again, it is plaintiffs' burden to

---

[4] In its entirety, the local controversy exception provides:

> (4)  A district court shall decline to exercise [diversity jurisdiction]——
>
> (A)(i) over a class action in which——
>
> > (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

establish that the local controversy exception applies. <u>In re</u> <u>Hannaford Bros. Co.</u>, 564 F.3d at 78.

In their motion to remand this case, plaintiffs asserted that the conduct of Wal-Mart, a local defendant, was "a significant basis" for their claims. The district court disagreed, finding that plaintiffs had failed to meet their burden to show that "Walmart's conduct [was] 'broader than the conduct of the rest of the co-defendants,'" and accordingly, was not a significant basis

_____

> (II) at least 1 defendant is a defendant—
>> (aa) from whom significant relief is sought by members of the plaintiff class;
>>
>> (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
>>
>> (cc) who is a citizen of the State in which the action was originally filed; and
>
> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
>
> (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons . . . .

28 U.S.C. § 1332(d)(4)(A).

of plaintiffs' claims.  This "a significant basis" element is the only disputed element of the exception here.

CAFA does not define "a significant basis" in the statutory text, and this circuit has not yet addressed its meaning. See Manson v. GMAC Mortgage, LLC, 602 F. Supp. 2d 289, 295 (D. Mass. 2009).  To highlight the choices we face, we first explore how other circuits have approached the phrase.  We then define our standard for this inquiry by evaluating CAFA's text and apply our standard to plaintiffs' allegations against Wal-Mart.

### a.    "A Significant Basis" in the Circuits

In a leading case on the local controversy exception, the Third Circuit explained that CAFA's use of the word "significant" means that "[t]he local defendant's alleged conduct must be an important ground for the asserted claims in view of the alleged conduct of all the Defendants."  Kaufman v. Allstate New Jersey Ins. Co., 561 F.3d 144, 157 (3d Cir. 2009) (citing Oxford English Dictionary (2d ed. 1989) (defining "significant" as "important, notable")).  The test is relative: "Whether the local defendant's alleged conduct is significant cannot be decided without comparing it to the alleged conduct of all the Defendants." Id.  "If the local defendant's alleged conduct is a significant part of the alleged conduct of all the Defendants, then the significant basis provision is satisfied.  Whether this condition is met requires a substantive analysis comparing the local

- 22 -

defendant's alleged conduct to the alleged conduct of all the Defendants." Id. at 156.[5]

Other circuits have largely followed the Third Circuit's approach to the "a significant basis" element of CAFA's local controversy exception.[6] Kaufman's comparative analysis is not difficult to apply where a local defendant's conduct plays only a peripheral role in plaintiffs' claims. In such cases, a defendant's conduct is clearly not "a significant basis" for the

---

[5] Factors that the Third Circuit considered relevant to this analysis included:

> 1) the relative importance of each of the claims to the action; 2) the nature of the claims and issues raised against the local defendant; 3) the nature of the claims and issues raised against all the Defendants; 4) the number of claims that rely on the local defendant's alleged conduct; 5) the number of claims asserted; 6) the identity of the Defendants; 7) whether the Defendants are related; 8) the number of members of the putative classes asserting claims that rely on the local defendant's alleged conduct; and 9) the approximate number of members in the putative classes.

Kaufman, 561 F.3d at 157 n.13.

[6] See Opelousas General Hosp. Authority v. FairPay Solutions, Inc., 655 F.3d 358, 361-62 (5th Cir. 2011); Mason v. Lockwood, Andrews & Newnam, P.C., 842 F.3d 383, 395-97 (6th Cir. 2016); Roppo v. Travelers Commercial Insurance Co., 869 F.3d 568, 584 & n.51 (7th Cir. 2017); Westerfeld v. Independent Processing, LLC, 621 F.3d 819, 825 (8th Cir. 2010); Benko v. Quality Loan Serv. Corp., 789 F.3d 1111, 1118-19 (9th Cir. 2015); Woods v. Standard Insurance Co., 771 F.3d 1257, 1265-1267 (10th Cir. 2014); see also Evans v. Walter Industries, Inc., 449 F.3d 1159, 1166-68 (11th Cir. 2006) (predating Kaufman but adopting similar comparative test).

claims.  See, e.g., Opelousas General Hosp. Authority v. FairPay

Solutions, Inc., 655 F.3d 358, 361-62 (5th Cir. 2011) (local

defendant's conduct not "a significant basis" where local

defendant was only one of over one hundred insurers nationwide who

allegedly participated in racketeering scheme).[7]  The analysis is

similarly straightforward where the local defendant's conduct

plays an outsized role in the plaintiffs' claims.  In those cases,

_____

[7] This outcome with a "peripheral defendant" is supported by an example supplied by Congress in the committee report on CAFA. See S. Rep. No. 109-14, at 40 (2005) (explaining local controversy exception's "a significant basis" and "significant relief" elements).  The committee wrote:

> For example, in a consumer fraud case alleging that an insurance company incorporated and based in another state misrepresented its policies, a local agent of the company named as a defendant presumably would not fit this criteria [sic].  He or she probably would have had contact with only some of the purported class members and thus would not be a person from whom significant relief would be sought by the plaintiff class viewed as a whole. Obviously, from a relief standpoint, the real demand of the full class in terms of seeking significant relief would be on the insurance company itself.  Similarly, the agent presumably would not be a person whose alleged conduct forms a significant basis for the claims asserted.  At most, that agent would have been an isolated role player in the alleged scheme implemented by the insurance company.  In this instance, the real target in this action (both in terms of relief and alleged conduct) is the insurance company, and if that company is not local, this criterion would not be met.

Id. (footnote omitted).

- 24 -

the defendant's conduct clearly is "a significant basis" for the plaintiffs' claims, so the exception applies. See, e.g., Mason v. Lockwood, Andrews & Newnam, P.C., 842 F.3d 383, 396 (6th Cir. 2016) (negligent conduct of local subsidiary formed expressly to perform all of non-local parent company's quality control work was "a significant basis" when "quality control [was] the very core of plaintiffs' professional negligence claim").

But courts adopting Kaufman's comparative approach have split over its application to cases like this one: claims alleging that local and non-local defendants "all engaged in the same conduct." Kitchin v. Bridgeton Landfill, LLC, 3 F.4th 1089, 1094 (8th Cir. 2021) (internal quotation omitted). Courts considering complaints of this nature under CAFA have reached different results. Id. at 1094-95 (collecting cases and noting split outcomes). "Some courts . . . have adopted the view that allegations that the local and nonlocal defendants all engaged in the same conduct suffice to show that the local defendant's conduct meets the significant-basis requirement." Id. at 1094 (quotation marks omitted); see also, e.g., Benko v. Quality Loan Serv. Corp., 789 F.3d 1111, 1118-19 (9th Cir. 2015); Coleman v. Estes Express Lines, Inc., 631 F.3d 1010, 1020 (9th Cir. 2011). But "a number of courts taking the opposite view" have "found that a complaint that did not allege any substantive distinctions between the conduct of the local and nonlocal defendants failed to indicate

whether the local defendants' alleged conduct is an <u>important</u> ground for the asserted claims in view of the alleged conduct of all the Defendants." <u>Kitchin</u>, 3 F.4th at 1095 (internal quotations omitted).

Courts taking the latter view have required some sort of plus-factor in the allegations of a local defendant's conduct (as compared to non-local defendants' conduct) to count the local defendant's conduct as "a significant basis" of the plaintiffs' claims. "If 'nothing in the complaint distinguishes the conduct of [the local defendant] from the conduct of the other defendants,' then the allegations in the complaint do not satisfy the significant-basis requirement." <u>Id.</u> (quoting <u>Opelousas</u>, 655 F.3d at 362); <u>see also</u> <u>Opelousas</u>, 655 F.3d at 363 (requiring "more detailed allegations or extrinsic evidence detailing the local defendant's conduct in relation to the out-of-state defendants" to satisfy significant basis requirement).[8]

### b. "A Significant Basis" and CAFA's Text

This circuit has not previously applied CAFA's local controversy exception where local and non-local defendants are

---

[8] <u>Accord</u>, <u>Atwood</u> v. <u>Peterson</u>, 936 F.3d 835, 840–41 (8th Cir. 2019) ("CAFA removal is not foreclosed by the complaint's conclusory allegations that the local defendants engaged in the same conduct as the diverse defendant . . . ."); <u>Evans</u>, 449 F.3d at 1167 (requiring evidence showing whether local defendant "played a significant role in the alleged [misconduct], as opposed to a lesser role, or even a minimal role").

alleged to have engaged in the same conduct.  We begin with the statutory text.  Penobscot Nation v. Frey, 3 F.4th 484, 490-91 (1st Cir. 2021) (en banc).  When Congress enacts its purposes and findings into the text, "[w]e cannot interpret federal statutes to negate their own stated purposes."  King v. Burwell, 576 U.S. 473, 493 (2015) (quoting New York State Dep't of Social Servs. v. Dublino, 413 U.S. 405, 419-20 (1973)).  "Of course, words are given meaning by their context, and context includes the purpose of the text."  A. Scalia & B. Garner, Reading Law 56 (2012); accord, e.g., Gundy v. United States, 588 U.S. 128, 141 (2019) (Court interprets words in statute in context and often looks to history and purpose of statute); 1 W. Blackstone, Blackstone's Commentaries on the Laws of England *59 (Morrison ed. 2001) ("The fairest and most rational method to interpret the will of the legislator, is by exploring his intentions at the time when the law was made, by signs the most natural and probable.  And these signs are either the words, the context, the subject-matter, the effects and consequences, of the spirit and reason of the law.").

In relevant part, the text of CAFA's local controversy exception requires that a local defendant's "alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class."  28 U.S.C. § 1332(d)(4)(A)(i)(II)(bb).  The focus of the text is on the defendant's "alleged conduct" in the case at hand, not on "generic market share numbers" or other

- 27 -

proxies for the relative size of a defendant's business. Kaufman, 561 F.3d at 157. Nor is the "a significant basis" element concerned with defendants' potential exposure to the class, since that is the express focus of the preceding clause. See 28 U.S.C. § 1332(d)(4)(A)(i)(II)(aa) (local controversy exception applies only if plaintiff class seeks "significant relief" from a local defendant). Rather, the text of the "a significant basis" element focuses on the relationship between a local defendant's alleged conduct and the plaintiffs' claims.

CAFA's use of the phrase "a significant basis" requires a comparative analysis to determine whether the defendant's alleged conduct is "an important ground for the asserted claims in view of the alleged conduct of all the Defendants." Kaufman, 561 F.3d at 157. But it does not follow that the test must be superlative, as the requirement of a plus-factor would have it.

Requiring special, more detailed, or additional allegations about the local defendant's conduct would rewrite "a significant basis" in the statute into "the most significant basis." Under CAFA's plain text, more than one defendant's conduct can constitute "a significant basis" for the plaintiffs' claims. First, the exception's requirement that "at least 1 defendant" must satisfy its provisions clearly implies that more than one defendant may do so. See 28 U.S.C. § 1332(d)(4)(A)(i)(II) (emphases added). Second, Congress determined that, to trigger

the local controversy exception, defendant's conduct must be "a significant basis" of plaintiffs' claims, without saying it must be "the most significant basis." 28 U.S.C. § 1332(d)(4)(A)(i)(II)(bb) (emphasis added). The statutory text assumes that more than one defendant's conduct can form "a significant basis for the claims asserted." Id. We agree with Kaufman's comparative approach, but such comparisons must admit the possibility (clear from CAFA's text) that more than one defendant's conduct can be "a significant basis" of the plaintiffs' claims.

From CAFA's text, we see no need for a plus-factor to satisfy the "a significant basis" element of CAFA's local controversy exception. Nor does this contradict the Third Circuit's comparative approach as set out in Kaufman and adopted by many circuits. Plaintiffs allege here that the local defendants and the non-local defendant pursued parallel courses, without distinguishing between their roles. This situation easily satisfies Kaufman's comparative formulation of the "a significant basis" requirement. See 561 F.3d at 157 n.13 (factors include ratio of "claims that rely on the local defendant's alleged conduct" to total "number of claims asserted" and "number of members of the putative classes asserting claims that rely on the local defendant's alleged conduct" to total "number of members of the putative classes"); see also Evans, 449 F.3d at 1167 ("a significant basis" turned on whether "a significant number or

percentage of putative class members may have claims against" local defendant).

Under CAFA's text, the "a significant basis" element must remain comparative without sliding down a slippery slope to become superlative. To preserve that limit, courts should not collapse the inquiry into a mechanistic search for a plus-factor distinguishing the conduct of a local defendant. We agree with the Ninth Circuit: where a complaint makes undifferentiated allegations that a local defendant and a non-local defendant violated the same provisions of law in the same way and caused the same alleged harm, the conduct of the local defendant is not automatically rendered "insignificant." See Coleman, 631 F.3d at 1020. To the contrary, when all defendants are alleged to have engaged in identical conduct forming the basis for all of plaintiffs' claims, a proper application of CAFA's text and Kaufman's key factors will often mean that each defendant's conduct, including local defendants, counts as "a significant basis" of the claims.

Still, often is not always. In every case, a holistic evaluation of factors like those identified in Kaufman remains central to determine whether a local defendant's conduct forms "a significant basis" of plaintiffs' claims. We remain sensitive to Congress's suggestion that the local controversy exception is a "narrow" one, "carefully drafted to ensure that it does not become

a jurisdictional loophole."  S. Rep. 109-14, at 39; see also Westerfeld v. Independent Processing, LLC, 621 F.3d 819, 823 (8th Cir. 2010) ("[A]ny doubt about the applicability of CAFA's local-controversy exception" should be resolved "against . . . the party who seeks remand.").  We next apply this comparative approach to determine whether Wal-Mart's conduct as the relevant local defendant forms "a significant basis" of the plaintiffs' claims in this case.

### c.    Wal-Mart's Conduct as a Significant Basis

Wal-Mart is the key local defendant whose conduct was relevant for the "a significant basis" requirement.  As the district court noted in denying remand under the local controversy exception, plaintiffs brought identical claims against each of the four initial defendants — three local (Wal-Mart, Walgreens, and CVS), and one non-local (Costco).  Kress Stores, 2021 WL 2912436, at *4.  The parties and the district court all looked for some plus-factor to differentiate Wal-Mart's conduct from the conduct of the other defendants, particularly Costco, as the lone non-local defendant.

To distinguish Wal-Mart's conduct, plaintiffs relied on press statements by a high-ranking Wal-Mart official in Puerto Rico admitting that the executive orders forbade the sale of non-essential goods.  Id.  Plaintiffs argued that the local

retailers had relied on those statements as a promise that Wal-Mart would not sell non-essential merchandise.

The district court was not persuaded. Even putting aside our doubts about plaintiffs' supposed reliance, we agree with the district court that the Wal-Mart official's statements were not a "promise binding Walmart not to sell certain items." Id. We also agree with the district court's additional finding that these statements, "even if promissory, would [not] make Walmart's conduct a 'significant basis' relative to the conduct of the other" large retailer defendants, since "all four Megastore[s] are alleged to have sold prohibited articles." Id. at *5.

While we agree with those observations, we disagree with the district court's further conclusion that plaintiffs had "failed to meet their burden of showing that the conduct of a local defendant is a 'significant basis' for the claim asserted." Id. at *4. As explained above, the local controversy exception's "a significant basis" element does not require such a plus-factor.

In this complaint, local and non-local defendants were referred to jointly by a collective noun that was the subject of all the allegations of the conduct forming the basis of the plaintiffs' claims. Applying Kaufman's factors to this situation, all the claims run against Wal-Mart, and all the plaintiffs in the putative class have claims against Wal-Mart. See Kaufman, 561 F.3d at 157 n.13. Plaintiffs' allegations against Wal-Mart, a

local defendant, suffice to satisfy the "a significant basis" requirement of CAFA's local controversy exception in 28 U.S.C. § 1332(d)(4)(A).

The district court thus erred in finding that the local controversy exception did not apply merely because plaintiffs did not point to an adequate plus-factor in Wal-Mart's conduct. Because the district court's decision not to apply the exception was based entirely on plaintiffs' failure to establish this element, and because defendants do not challenge plaintiffs' arguments as to any other elements on appeal, the local controversy exception applies here.

### III. Costco's Motion to Sever

Because CAFA's local controversy exception applies, we must remand at least a portion of this case to the Puerto Rico courts. Before determining the scope of any remand, however, we turn to Costco's alternative argument for affirming summary judgment in its favor.

In Costco's view, the district court should have granted its motion to sever, thus permitting plaintiffs' claims against Costco to proceed in federal court, regardless of the outcome of the court's CAFA analysis. As we explain below, we disagree. Contrary to Costco's arguments, there is a logical connection between the claims against it and Wal-Mart beyond the mere allegation that they both engaged in unfair trade practices. Thus,

the district court did not abuse its discretion in denying Costco's motion to sever.

To recap, when Costco removed this case to federal court, it also filed a motion to sever under Federal Rules of Civil Procedure 20(a) and 21, arguing that plaintiffs had misjoined local defendants Wal-Mart, Walgreens, and CVS in violation of the permissive joinder rule, Rule 20(a). Costco asked the district court to sever the claims against all misjoined defendants under Rule 21 while retaining jurisdiction over the claims against Costco, for which it argued both ordinary diversity jurisdiction and CAFA jurisdiction applied. Some months later, in a minute order, the district court denied Costco's motion without prejudice.

We review the district court's ruling denying Costco's motion to sever for an abuse of discretion. Cruz v. Bristol-Myers Squibb Co., P.R., Inc., 699 F.3d 563, 568-69 (1st Cir. 2012). An abuse of discretion occurs: (1) "when a relevant factor deserving of significant weight is overlooked"; (2) "when an improper factor is accorded significant weight"; (3) "when the [district] court considers the appropriate mix of factors, but commits a palpable error of judgment in calibrating the decisional scales"; or (4) when it commits "a material error of law." United States v. Walker, 665 F.3d 212, 222-23 (1st Cir. 2011) (first quoting United

States v. Nguyen, 542 F.3d 275, 281 (1st Cir. 2008), then citing United States v. Snyder, 136 F.3d 65, 67 (1st Cir. 1998)).

## A.    Waiver

On appeal, plaintiffs ignore the merits of Costco's arguments about the district court's ruling on its motion to sever and instead focus on waiver.  Without citing any authority, they contend that Costco has waived its challenge to this ruling by failing to file a notice of appeal or "any further motion" in the district court on this issue.

We disagree that Costco has waived a challenge to this ruling.  Costco did not need to file a cross-appeal from the final judgment to preserve this challenge.  Because the district court's final judgment was favorable to Costco, a cross-appeal by Costco on the motion to sever would have been both unnecessary and improper.  See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. W. Lake Acad., 548 F.3d 8, 23 (1st Cir. 2008) ("A cross-appeal is generally not proper to challenge a subsidiary finding or conclusion when the ultimate judgment is favorable to the party cross-appealing.").  Under well-established principles, Costco is free to raise on appeal any argument made manifest in the record as an alternative ground for affirming the district court's judgment dismissing the claims against it.  See Haley v. City of Boston, 657 F.3d 39, 53 (1st Cir. 2011) ("It is black-letter law that . . . an appellee can argue in support of a lower court's

ruling in his favor on any ground made manifest in the record . . . without a cross-appeal . . . ."). Here, Costco argued to the district court in its motion to sever that federal jurisdiction exists, regardless of CAFA, because Costco is diverse from all plaintiffs, and plaintiffs had misjoined the non-diverse, local defendants. Thus, Costco can pursue this same argument on appeal as an alternate ground for affirmance.

## B. Merits of the District Court's Denial of the Motion to Sever

We now turn to whether the district court abused its discretion in denying Costco's motion to sever. Costco brought its motion under Federal Rule of Civil Procedure 21, which grants a district court discretion to, "[o]n motion or on its own, . . . at any time, on just terms, add or drop a party" and "sever any claim against a party." Fed. R. Civ. P. 21.

When considering a motion to sever under Rule 21, we have looked to Rule 20, which provides the legal standard for permissive joinder, for guidance. See Abdullah v. Acands, Inc., 30 F.3d 264, 268 & n.5 (1st Cir. 1994) (in ruling on motion to dismiss, applying Rule 20 requirements when evaluating argument to sever under Rule 21 based on misjoinder). Rule 20(a)(2) governs the permissive joinder of defendants and states:

> "Persons . . . may be joined in one action as defendants if:
>
> (A) any right to relief is asserted against them jointly, severally, or in the alternative

> with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action."

Fed. R. Civ. P. 20(a)(2) (emphasis added). The parties agree that plaintiffs did not assert any claims under a theory of joint or several liability that could satisfy the first clause in subpart A of the rule but that there are "question[s] of law or fact common to all defendants" sufficient to satisfy subpart B. Thus, the only issue in dispute is whether the claims against Costco and Wal-Mart "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" within the meaning of Rule 20(a)(2)(A).

We have not previously construed the "transaction or occurrence" requirement for permissive joinder under Rule 20(a)(2)(A). But in deciding questions under Rule 20(a) courts often look to interpretations of the similar "transaction or occurrence" requirement for compulsory counterclaims in Rule 13(a). See Fed. R. Civ. P. 13(a)(1) ("A pleading must state as a counterclaim any claim that . . . the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . ."); 7 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1653 (3d ed. 2012); see, e.g., Mosley v.

Gen. Motors Corp., 497 F.2d 1330, 1333 (8th Cir. 1974) (holding, based on analogy to Rule 13(a), that Rule 20(a)'s "transaction or occurrence" standard permits "all reasonably related claims" to be tried together). We do the same here.

Turning to Rule 13(a)'s similar "transaction or occurrence" provision, we interpreted that provision broadly in our most recent decision on the issue, Iglesias v. Mutual Life Insurance Co. of New York, 156 F.3d 237 (1st Cir. 1998), abrogated on other grounds by Global NAPS, Inc. v. Verizon New England Inc., 603 F.3d 71 (1st Cir. 2010). In that case, we held that the "transaction or occurrence" standard requires only a "logical relation" between the claims, id. at 241, as the U.S. Supreme Court had stated many years earlier in Moore v. N.Y. Cotton Exchange, 270 U.S. 593 (1926). See id. at 610 (noting that "'[t]ransaction' is a word of flexible meaning" when interpreting Rule 13(a) and holding that two claims arise from the same "transaction" when there is a "logical relationship" between them). We then explained that a "logical relation" between claims exists when "the same aggregate of operative facts serves as the basis of both claims." Iglesias, 156 F.3d at 241-42 (quoting McCaffrey v. Rex Motor Transp., Inc., 672 F.2d 246, 249 (1st Cir. 1982)).[9]

---

[9] Iglesias also discussed a second requirement to establish a "logical relation" under Rule 13(a): "that the aggregate core of

In _Iglesias_, we concluded that the "transaction or occurrence" standard was not met because the claim and counterclaim at issue did not arise out of the same aggregate of operative facts and instead rested on "entirely different" sets of facts with little to no overlap. _Id._ at 241-42. As we explained, Iglesias's discrimination and contract claims involved his employment contract and role as a sales representative in Puerto Rico, defendant's decision to limit the products it sold in Puerto Rico, and Iglesias's eventual termination for poor performance. _Id._ at 239-40, 242; Brief for Appellant at *5, _Iglesias_ v. _Mutual Life Insurance Co. of New York_, 156 F.3d 237 (1st Cir. 1998) (No. 97-1648), 1997 WL 33770663 (describing Iglesias's "poor performance" review prior to termination). By contrast, defendant's counterclaim focused on expense reports submitted by Iglesias, which the defendant only realized Iglesias "padded" after his termination, and whether the reports complied with its reimbursement policies. _Id._ at 240, 242. The dissenting opinion views the outcome in _Iglesias_ as supporting its conclusion. But other than the fact that the claim and counterclaim were between

---

facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant." 156 F.3d at 242. This requirement is specific to counterclaims in that it asks whether the success of the counterclaim "depend[s] on the success or failure of [the original] claim," _id._, so we do not consider it here.

the same parties, which of course is always true when it comes to Rule 13(a) analysis, there was no other connection between the claims in Iglesias. Thus, as we concluded, there was no reasonable way to view a dispute about expense vouchers Iglesias submitted and a dispute about the defendant's decisions to limit its product offerings in Puerto Rico and terminate Iglesias for poor sales as arising out of the same "transaction or occurrence."

Here, unlike in Iglesias, it was reasonable for the district court to conclude that plaintiffs' claims against Costco and Wal-Mart related to the same occurrence: the break-out of the COVID-19 pandemic in Puerto Rico in March 2020, and the Governor's Executive Orders limiting business operations for eleven weeks in response. Thus, the district court did not abuse its discretion in concluding that the claims arise out of the same aggregate of operative facts.

Although portions of plaintiffs' evidence related to breach and causation may be defendant-specific, the Supreme Court has confirmed that the "transaction or occurrence" standard does not require that the exact same body of evidence be used to prove all claims for joinder to be proper. See Moore, 270 U.S. at 610 ("That [the essential facts to constitute the claims] are not precisely identical, or that the counterclaim embraces additional allegations . . . does not matter."). And review of the case law on this issue demonstrates that our court and other federal

appellate courts most often conclude that the "transaction or occurrence" requirement has not been met such that joinder is improper in cases with an unusually large number of parties or without any factual overlap between the claims. See, e.g., Abdullah, 30 F.3d at 268 & n.5 (affirming ruling finding misjoinder and severing parties in case with 1,000 plaintiffs and ninety-three defendants because plaintiffs had failed to satisfy "transaction or occurrence" requirement when "[t]he Complaint is bereft of factual allegations indicating why [1,093 parties] belong in the same action"); AF Holdings, LLC v. Does 1-1058, 752 F.3d 990, 993, 998 (D.C. Cir. 2014) (finding misjoinder in case with 1,058 unnamed Doe defendants, identified only by their IP addresses, because plaintiffs had not satisfied "transaction or occurrence" requirement); see also Alston v. Town of Brookline, Mass., No. CV 15-13987, 2016 WL 5745091, at *11, 14 (D. Mass. Sept. 30, 2016) (severing eight plaintiffs' claims because they had "no facts in common"). Neither factor is present here.

The dissenting opinion disagrees with our joinder analysis because it determines that plaintiffs' claims against Costco and Wal-Mart are connected only by an allegation that defendants "committed the exact same violation of the law in exactly the same way." Dissent, infra, at 54 (quoting Botero v. Commonwealth Limousine Serv. Inc., 302 F.R.D. 285, 286-87 (D. Mass. 2014). In support, the dissent cites cases in which "a patent,

trademark, or copyright holder tries to sue multiple independent competitors for infringing the same patent, trademark, or copyright," and courts then find that such claims fail the "transaction or occurrence" requirement. Dissent, infra, at 56–61.

But in our view, the cases the dissent cites do not demonstrate that the district court abused its discretion here. For example, the dissenting opinion relies on In re EMC Corp., 677 F.3d 1351 (Fed. Cir. 2012), for the principle that when a plaintiff merely alleges that "independent defendants independently violat[ed] the same law in the same way, but in separate transactions," it has not met the "transaction or occurrence" standard of Rule 20(a). Dissent, infra, at 58. The decision in EMC Corp. was based on the particular set of facts in that case, however, rather than on a disagreement with the actual legal test.

In EMC Corp., the Federal Circuit applied the same "logical relationship" and "aggregate of operative facts" standard that our court applied in Iglesias. Id. at 1358. Importantly, though, on appeal it was unclear if there was any logical relationship between the claims against the defendants in EMC Corp.; instead, it appeared possible they had been joined in a single action merely because plaintiffs claimed that they all had infringed the same patent. See id. at 1353, 1357-58. For example, the defendants were scattered around the country and allegedly

violated the patent at different times.  See Complaint at 2-5, Oasis Rsch., LLC v. Carbonite, Inc., 2010 WL 9460794 (E.D. Tex. Aug 30, 2010) (No. 4:10-CV-435) (underlying complaint noting that EMC Corp.'s defendant-petitioners' principal places of business span Massachusetts, Arizona, and California); id. at 6-27 (failing to identify when alleged patent violations occurred).  To determine whether the Rule 20(a) standard was satisfied, the Federal Circuit identified six "pertinent factual considerations" for the district court to apply with "considerable discretion" on remand.  EMC Corp., 677 F.3d at 1359-60.  Although three of these factors were patent-specific, the other three focused on whether alleged violations "occurred during the same time period," whether there was "some relationship among the defendants," and "whether the case involves a claim for lost profits."  Id.  Of these three non-patent-specific factors, at least two support plaintiffs' joinder of its claims against Costco and Wal-Mart in this case. For example, Costco and Wal-Mart's alleged violations of the Orders did occur during the same time period.  And plaintiffs are asking for lost profits as damages.

Further, the dissenting opinion does not cite and we have not found any cases in which a sister circuit relied upon EMC Corp. to reject joinder in a non-intellectual property case. Instead, only two circuits have relied on the joinder analysis in EMC Corp., and, in both cases, the circuits held that joinder was

proper.[10]  See Courthouse News Serv. v. Schaefer, 2 F.4th 318, 325 (4th Cir. 2021) (finding that claims in First Amendment case arise out of the "same transaction or occurrence" when plaintiffs "alleged identical claims against similarly situated defendants"); Viahart, L.L.C. v. GangPeng, No. 21-40166, 2022 WL 445161, at *4 (5th Cir. Feb. 14, 2022) (finding that claims arise out of the "same transaction or occurrence" when plaintiffs alleged that defendants were "working together").

One of the two circuit decisions citing EMC Corp. supports the district court's ruling permitting joinder in this case: the Fourth Circuit's decision in Courthouse News Service. There, a news organization brought First Amendment claims against the clerks of two Virginia state courts after observing delays in accessing newly filed complaints over a period of several months. Courthouse News, 2 F.4th at 322.  The clerks, who lost below, appealed on multiple grounds, including misjoinder.  Id. at 325. Applying Rule 20(a)'s "transaction or occurrence" requirement and the same "logical relationship" test we used in Iglesias, the Fourth Circuit found that the claims against both defendants "arose

---

[10] The limited reliance on EMC Corp. may be due to the Federal Circuit's own caution that its decision had limited precedential weight.  Because Congress adopted the Leahy-Smith America Invents Act, 125 Stat 284, in September 2011 to govern joinder in patent cases, the 2012 EMC Corp. decision "only govern[s] a number of cases that were filed before the passage of [the 2011 Act]."  EMC Corp., 677 F.3d at 1356.

out of Courthouse News's coverage of Virginia courts" over the same time period and in the same geographic place. Id. Thus, the Fourth Circuit ruled, the plaintiff's "identical claims against similarly situated defendants" met the joinder standard and the district court did not abuse its discretion in so concluding. Id.

We point out the decision in Courthouse News not because the facts are identical to this case; we realize that the court clerks who were the defendants there were not competitors. But Courthouse News does support the conclusion that it is not an abuse of discretion for a district court to permit joinder when a plaintiff has sued multiple defendants for similar but independent conduct that occurred in the same time period and in the same place. That is exactly what happened here, and thus Courthouse News counsels in favor of affirming the district court's ruling denying Costco's motion to sever.

The dissenting opinion also cites seven district court decisions that apply EMC Corp. in intellectual property cases to conclude that Rule 20(a)'s "transaction or occurrence" requirement is not satisfied. These cases stand for the proposition that plaintiffs cannot join entirely unrelated defendants, located in different states, on the sole ground that they infringed the same patent, trademark, or copyright at various points in time. In our view, these cases do not counsel for reversing the district court's joinder ruling here.

Take <u>Golden Scorpio Corp.</u> v. <u>Steel Horse Bar & Grill</u>, 596 F. Supp. 2d 1282 (D. Ariz. 2009), for example.  In that case, the plaintiff, who operated a restaurant and bar named "STEEL HORSE" and had registered the "STEEL HORSE with design" trademark for its restaurant services, joined thirteen defendants from all over the country in a single trademark action.  <u>Id.</u> at 1283-84.  To support its claims, Golden Scorpio alleged that these thirteen defendants violated its trademark at different times in thirteen different states.  <u>Id.</u> at 1284.  It did not identify any relationship or factual connection between the thirteen defendants other than the allegation that they had infringed the same trademark.  <u>See</u> <u>id.</u>  Accordingly, the district court determined that Golden Scorpio's claims did not satisfy Rule 20(a)'s "transaction or occurrence" requirement and granted a defendant's motion to sever.  <u>Id.</u> at 1284-85.

This case is not like <u>Golden Scorpio</u>.  Both Costco and Wal-Mart's violations occurred in Puerto Rico, during the same eleven weeks of the COVID-19 pandemic, in response to the same set of Executive Orders governing business operations during the earliest phases of the pandemic.  Thus, there is a connection to the claims against these two parties beyond the mere allegation that they both engaged in unfair trade practices against plaintiffs.  In our view, the intellectual property cases in which plaintiffs joined defendants based solely on their wholly separate

- 46 -

violations, spanning different locations and time periods, are just not dispositive here.

Costco presents two additional arguments for why the claims against it should be severed from the claims against Wal-Mart. Neither establishes that the district court's denial of Costco's motion to sever amounted to an abuse of discretion.

Costco's first argument -- that joinder is inappropriate where plaintiffs do not allege joint or several liability or concerted action by defendants -- ignores the plain text of Rule 20(a). Although it is true that plaintiffs did not assert a theory of joint or several liability, or allege that the defendants acted in concert, neither is required under Rule 20(a). To be sure, alleging joint or several liability would be sufficient to fulfill the first clause of Rule 20(a)(2)(A), but it is not <u>necessary</u>. Instead, plaintiffs may also prove "in the alternative [that claims arise] out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2)(A). Similarly, although plaintiffs may satisfy the "transaction or occurrence" requirement by plausibly alleging that defendants acted in concert, they do not need to do so. As we discussed above, plaintiffs also may satisfy the requirement by proving that claims against the joined defendants are otherwise "logical[ly] relat[ed]" or share an "aggregate of operative facts." <u>See</u> <u>Iglesias</u>, 156 F.3d at 241-42.

Costco next argues that "Costco would clearly be prejudiced by a loss of the federal forum to which it is entitled by virtue of diversity of citizenship," but again, we are not persuaded. Costco does not identify any unusual prejudice considerations or address the fact that it can still file a motion to sever in the Puerto Rico court on remand. See In re Prempro Prods. Liab. Litig., 591 F.3d 613, 623-24 (8th Cir. 2010) (noting that, when federal diversity jurisdiction depends on a question of joinder, "the proper procedure" may be for parties to argue the joinder issue in state court). Further, Costco does not cite and we did not find any cases with analogous facts in which a circuit court overturned a district court's denial of a motion to sever on prejudice grounds. Thus, Costco has failed to demonstrate that the district court's ruling on its motion to sever was an abuse of discretion. The district court therefore lacked jurisdiction over the claims against either defendant. We therefore may not reach the merits of plaintiffs' claims.

## IV. CONCLUSION

The district court's denial of plaintiffs' motion to remand is REVERSED, the judgment on the merits is VACATED for lack of jurisdiction, and this action is REMANDED to the district court with instructions to remand this action to the Puerto Rico courts. Costs are taxed in favor of plaintiffs-appellants.

**-Opinion Concurring in Part/Dissenting in Part Follows-**

**HAMILTON**, **Circuit Judge**, concurring in part and **dissenting in part.** I agree with the majority opinion on the Class Action Fairness Act issues and with the remand of plaintiffs' claims against Wal-Mart to the Puerto Rico courts. I also agree that Costco preserved for appeal its challenge to the district court's denial of its motion to sever.

I respectfully disagree, however, with the majority's decision to affirm the denial of Costco's motion to sever. As explained below, plaintiffs' claims against Costco did not arise from the same series of transactions as their claims against Wal-Mart. Plaintiffs do not even claim, let alone offer evidence, that Wal-Mart and Costco acted jointly. At most, plaintiffs allege that Wal-Mart and Costco — acting independently and in competition with each other — violated the same alleged legal duty in similar ways at the same time. The best guidance for such questions of joinder and misjoinder comes from patent and other intellectual property cases where plaintiffs allege that multiple defendants acted separately and infringed the same patent, copyright, or trademark. Sound practice should require severance of claims against such multiple defendants, even if some pretrial coordination of discovery and other matters might be sensible.

Further, because in my view the district court had jurisdiction over the claims against Costco, I would reach the

merits of those claims and affirm the district court's grant of summary judgment in favor of Costco.

## I. Misjoinder and Severance

In a class action against multiple defendants, a district court should be on the lookout for possible misjoinder designed to defeat application of CAFA. I believe that is what we see in this case. If plaintiffs had brought their claims against Costco in a separate class action, Costco would certainly have been entitled to remove to federal court under CAFA. The local controversy exception would not apply.

The district court had the power to sever the claims against the non-local defendant, Costco, and should have done so to protect Costco's rights under CAFA from the misjoinder. That would have allowed the court to retain federal jurisdiction over the non-local defendant while remanding the claims against local defendants back to the Puerto Rico courts.

Federal Rules of Civil Procedure 20(a) and 21 entrust decisions related to permissive joinder to the sound discretion of the district court. See Hearts with Haiti, Inc. v. Kendrick, 856 F.3d 1, 4 (1st Cir. 2017) (district court's decision on a Rule 21 motion to add or drop a party is reviewed for abuse of discretion), citing Perry v. Blum, 629 F.3d 1, 16 (1st Cir. 2010). "An abuse of discretion occurs 'when a relevant factor deserving of significant weight is overlooked, or when an improper factor is

accorded significant weight, or when the court considers the appropriate mix of factors, but commits a palpable error of judgment in calibrating the decisional scales.'" United States v. Walker, 665 F.3d 212, 222-23 (1st Cir. 2011) (quoting United States v. Nguyen, 542 F.3d 275, 281 (1st Cir. 2008)). "In addition, 'an error of law is always tantamount to an abuse of discretion.'" Janney Montgomery Scott LLC v. Tobin, 571 F.3d 162, 166 (1st Cir. 2009) (quoting De Jesús Nazario v. Morris Rodríguez, 554 F.3d 196, 199 (1st Cir. 2009)).

On appeal, Costco argues that denial of severance here was an abuse of discretion because plaintiffs cannot meet the "same transaction, occurrence, or series of transactions or occurrences" requirement of Rule 20(a). As Costco sees the case, plaintiffs have not alleged or offered evidence of any collective or concerted activity by the different defendants, who are after all competitors of one another. Plaintiffs have alleged only that the different defendants committed the same alleged legal wrongs in the same way, which has repeatedly been held insufficient to justify even permissive joinder. Costco Br. at 20 (citing United States ex rel. Doe v. Taconic Hills Central School Dist., 8 F. Supp. 3d 339, 344 (S.D.N.Y. 2014) (citing in turn Peterson v. Regina, 935 F. Supp. 2d 628, 638 (S.D.N.Y. 2013))).

Plaintiffs did not respond to this argument on the merits. Instead, they argue only, without citing authority, that

Costco waived the argument by failing to file a notice of appeal or "any further motion" in the district court regarding severance. The majority opinion explains sufficiently why plaintiffs' waiver argument is wrong.  Ante at 35-36.

Perhaps because of the district court's initial legal error in denying application of CAFA's local controversy exception to the claims against Wal-Mart, the court did not address significant factors weighing in favor of Costco's motion to sever. See Walker, 665 F.3d at 222-23 (quoting Nguyen, 542 F.3d at 281). Under the district court's view of CAFA, severance of Costco would have produced two similar cases in the federal court rather than one case in the Puerto Rico courts and one case in the federal court.  Our application of the local controversy exception to this case should require recalibration of the "decisional scales" on Costco's motion to sever.  Id.  The district court did not have occasion to consider the prejudicial effects of denying Costco a federal forum for the claims against it.  While one option might be to remand the claims against Costco to have the district court reconsider the severance question, the grounds for severance here are so strong that the denial amounted to an abuse of discretion. I must also note, however, that even though my colleagues and I disagree on this point, my colleagues do not suggest that granting the motion to sever would have been an abuse of discretion.

Federal Rule of Civil Procedure 20(a)(2) governs permissive joinder of defendants: "Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." "The purpose of permissive joinder of parties is 'to promote trial convenience and expedite the final determination of disputes.'" Third Degree Films v. Does 1-47, 286 F.R.D. 188, 196 (D. Mass. 2012) (quoting 7 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1652 (3d ed. 2012)).

Plaintiffs' claims satisfy the second prong of Rule 20(a) because they present some questions of fact and law common to all defendants. The key issue here is the first prong of Rule 20(a) and its "threshold requirement" "that the plaintiffs' claim for relief arise out of 'the same transaction, occurrence, or series of transactions or occurrences.'" Abdullah v. Acands, Inc., 30 F.3d 264, 268 n.5 (1st Cir. 1994) (quoting Fed. R. Civ. P. 20(a)).

Rule 20(a)'s transaction-or-occurrence test has been construed as requiring "a logical relationship between the claims." In re EMC Corp., 677 F.3d 1351, 1357-58 (Fed. Cir. 2012) (quotation marks and citation omitted). To establish the required

logical relationship, "[p]laintiff must show 'substantial evidentiary overlap in the facts giving rise to the cause of action'" against the defendants. Botero v. Commonwealth Limousine Serv. Inc., 302 F.R.D. 285, 286 (D. Mass. 2014) (analyzing identical "transaction or occurrence" provision governing permissive joinder of plaintiffs under Rule 20(a)(1)) (quoting EMC Corp., 677 F.3d at 1358). "Thus, joinder is not warranted simply because defendants allegedly 'committed the exact same violation of the law in exactly the same way.'" Id. at 286-87 (quoting New Sensations, Inc. v. Does 1-175, 947 F. Supp. 2d 146, 148 (D. Mass. 2012)). Joinder is improper in those circumstances because, if claims against multiple defendants have no logical connection, then combining those defendants into a single proceeding will not "foster the objectives" of Rule 20(a) but instead "will result in prejudice, expense or delay." 7 Charles Alan Wright and Arthur R. Miller, Federal Practice & Procedure § 1652 (3d ed. 2012).

Here, plaintiffs do not claim that Costco and the other defendants engaged in any form of coordinated behavior. Plaintiffs did not allege or offer evidence to support a theory that Costco worked together with Wal-Mart, CVS, or Walgreens to sell non-essential goods in possible violation of the executive

orders.[11]  Nor do the defendant retailers' sales of non-essential

goods share any logical relation.  After all, the different

defendants are competitors.  They were competing with each other

in retail sales, before, during, and after the COVID-19 pandemic.

Accordingly, plaintiffs would need entirely non-overlapping

evidence to establish the breach, causation, and damages elements

of their tort claims with respect to each defendant retailer.  See

Park Club, Inc. v. Resolution Trust Corp., 967 F.2d 1053, 1058

(5th Cir. 1992) (evaluating parallel transaction-or-occurrence

test in Fed. R. Civ. P. 13(a) by considering, in part, "whether

substantially the same evidence" will support or refute the claims)

(internal quotations omitted).

When stated in terms of a "logical relationship," the

standard for proper joinder is admittedly rather abstract.  But

case law has added a substantial gloss that should guide us here.

The joinder-or-severance issue in this case alleging unfair

competition is similar to issues federal courts have faced in many

---

[11] The closest plaintiffs came to alleging concerted action was their allegation that the various defendants formed an "oligopoly" that "co-monopolized" [sic] the market.  But parallel oligopolistic behavior does not require or necessarily imply coordinated conduct.  See Kleen Products LLC v. Georgia-Pacific LLC, 910 F.3d 927, 931 (7th Cir. 2018) ("Oligopolies have always posed problems for conventional antitrust law: without something that can be called an agreement, they elude scrutiny under section 1 of the Sherman Act . . . .").

cases alleging various forms of unfair or unlawful competition against multiple, independent competitors.

The best parallels to this case are cases where a patent, trademark, or copyright holder tries to sue multiple independent competitors for infringing the same patent, trademark, or copyright. Such infringement cases all allege forms of illegal conduct to compete against the plaintiffs. Those cases invoke federal statutes, whereas plaintiffs here claim a form of unfair competition based on alleged violations of the Governor's executive orders and a broad Puerto Rico tort statute. For purposes of joinder v. severance, though, the key similarities are that the plaintiffs allege that separate competitors have taken unlawful action to obtain competitive advantages over the plaintiff, but have done so independently of one another.

Patent, copyright, and infringement cases against multiple, independent competitors often raise misjoinder issues very similar to the issue here. District courts decide such issues often. The issues rarely reach the circuit courts of appeals. A review of relevant case law shows, however, that the plaintiffs' allegations here do not permit proper joinder of the claims against Costco and the other defendants.

One of the rare circuit cases, the Federal Circuit's decision in In re EMC Corp., is especially instructive. In EMC Corp., a patent holder tried to join in one action its claims

against several competing defendants for infringement of the same patent. 677 F.3d at 1353. The district court in the case held joinder proper on the theory that the plaintiff's claims arose out of the same series of transactions. The district court found it sufficient that the defendants' allegedly infringing services were "not dramatically different." Id. at 1354.

The Federal Circuit rejected that standard and applied instead the "logical relationship" standard. Id. at 1358-59. The court explained that the district court's "not dramatically different" standard would always be satisfied, even where the accused products and processes were different:

> We agree that joinder is not appropriate where different products or processes are involved. Joinder of independent defendants is only appropriate where the accused products or processes are the same in respects relevant to the patent. But the sameness of the accused products or processes is not sufficient. Claims against independent defendants (i.e., situations in which the defendants are not acting in concert) cannot be joined under Rule 20's transaction-or-occurrence test unless the facts underlying the claim of infringement asserted against each defendant share an aggregate of operative facts. To be part of the "same transaction" requires shared, overlapping facts that give rise to each cause of action, and not just distinct, albeit coincidentally identical, facts. The sameness of the accused products is not enough to establish that claims of infringement arise from the "same transaction." Unless there is an actual link between the facts underlying each claim of infringement, independently developed products using differently sourced parts are not part of the same transaction,

> even if they are otherwise coincidentally identical.

Id. at 1359 (emphases added).

Based on that analysis, the Federal Circuit ordered the district court to reconsider the issue of severance under the proper standard. On remand, the district court ordered severance, making clear that joinder required more than the theories of parallel but independent infringement offered by plaintiff:

> In conclusion, the Court finds that the creation of five (5) separate lawsuits is appropriate in this case based on the lack of a logical relationship between the claims against each Defendant. According to the motions before the Court, each Defendant's accused product is different, Defendants are competitors of each other, Defendants worked independently to create their accused products, and there is no aggregate of operative facts that would indicate joinder is appropriate in this case. Under Rule 20, the unrelated Defendants in this case were improperly joined and should be severed into their own cases.

Oasis Research, LLC v. Carbonite, Inc., No. 4:10-CV-435, 2012 WL 3544881, at *6 (E.D. Tex. Aug. 15, 2012)(emphasis added).

The thrust of EMC Corp. is that a plaintiff cannot establish a "series of transactions" for purpose of Rule 20(a) by alleging that independent defendants independently violated the same law in the same way, but in separate transactions. If the law were otherwise — i.e., if the common questions of law and fact were sufficient to establish a

- 58 -

series of transactions or occurrences — the separate and independent requirements of Rule 20(a) would be merged.

The principle applied in EMC Corp. has been anticipated, followed, and applied to reject severance in a host of infringement cases against multiple competitors. E.g., Pinpoint, Inc. v. Groupon, Inc., No. 11 C 5597, 2011 WL 6097738, at *1 (N.D. Ill. Dec. 5, 2011) (severing claims against "unrelated companies that have nothing in common except [plaintiff's] allegation that they have infringed the same . . . patents"); Rudd v. Lux Prod. Corp. Emerson Climate Techs. Braeburn Sys., LLC, No. CIV.A. 09-CV-6957, 2011 WL 148052, at *3 (N.D. Ill. Jan. 12, 2011)(collecting cases: "a party fails to satisfy Rule 20(a)'s requirement of a common transaction or occurrence where unrelated defendants, based on different acts, are alleged to have infringed the same patent"); ThermaPure, Inc. v. Temp-Air, Inc., No. 10-CV-4724, 2010 WL 5419090, at *4 (N.D. Ill. Dec. 22, 2010) (finding Rule 20(a)'s common transaction or occurrence requirement not satisfied "where multiple defendants are merely alleged to have infringed the same patent or trademark."); Golden Scorpio Corp. v. Steel Horse Bar & Grill, 596 F. Supp. 2d 1282, 1285 (D. Ariz. 2009) (following "authority from other courts provid[ing] that allegations against multiple and unrelated defendants for acts of patent, trademark, and

copyright infringement do not support joinder under Rule 20(a)"); <u>Androphy</u> v. <u>Smith & Nephew, Inc.</u>, 31 F. Supp. 2d 620, 623 (N.D. Ill. 1998) (finding misjoinder in patent infringement claim involving "separate companies that independently design, manufacture and sell different products in competition with each other."); <u>New Jersey Mach. Inc.</u> v. <u>Alford Indus. Inc.</u>, 21 U.S.P.Q. 2d 2033, 2034–35 (D.N.J. 1991) ("claims of infringement against unrelated defendants, involving different machines, should be tried separately against each defendant"); <u>Siemens Aktiengesellschaft</u> v. <u>Sonotone Corp.</u>, 370 F. Supp. 970, 974 (N.D. Ill. 1973).[12]

---

[12] The cited patent cases all pre-date the Smith-Leahy America Invents Act of 2011, P.L. 112-29, which added 35 U.S.C. § 299, restricting joinder of parties in patent cases consistent with the cited cases. Section 299(b) provides that "accused infringers may not be joined in one action as defendants or counterclaim defendants, or have their actions consolidated for trial, based solely on allegations that they each have infringed the patent or patents in suit." The accompanying committee report explained that the provision was intended to adopt the majority view described in the <u>Rudd</u> v. <u>Lux Products</u> case cited above and to reject a minority view then common in the Eastern District of Texas and a few others. <u>See</u> H.R. Rep. 112-98 at 54-55 & n.61, <u>as reprinted in</u> 2011 U.S.C.C.A.N. 67, 85-86 & n.61 (expressly approving majority view summarized in <u>Rudd</u>). The <u>Rudd</u> court noted its agreement that the more expansive approach to permissive joinder eviscerated the same-transaction-or-occurrence requirement and made it indistinguishable from the requirement that there be a common issue of law or fact. 2011 WL 148052, at *2. My approach here is consistent with <u>Rudd</u> and Section 299.

A series of decisions dealing with attempts to join copyright infringement claims based on BitTorrent helps illustrate the

The course followed by most courts gives independent meaning to both requirements for permissive joinder under Rule 20(a), thus avoiding treating either requirement as surplusage. See generally, e.g., United States v. Holmquist, 36 F.3d 154, 160 (1st Cir. 1994) (interpretation should avoid rendering statutory words or phrases redundant). Accordingly, plaintiffs' claims against Costco and Wal-Mart for unfair competition do not "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2)(A). Plaintiffs have not offered allegations or evidence that the defendant competitors engaged in joint or collective action that might have justified treating their alleged actions as being "a series of transactions or occurrences."

Against this weight of persuasive authority rejecting joinder in other cases alleging that independent competitors competed with the plaintiff unfairly by violating the same patent, trademark, or copyright, the majority must look even further afield

---

importance of joint or concerted action to justify joinder, as explained in AF Holdings, LLC v. Does 1-1058, 752 F.3d 990, 998 (D.C. Cir. 2014). See also, e.g., New Sensations, Inc. v. Does 1-175, 947 F. Supp. 2d 146, 150 (D. Mass. 2012) (rejecting similar attempt at joinder); Liberty Media Holdings, LLC v. Swarm Sharing Hash File, 821 F. Supp. 2d 444, 451 (D. Mass. 2011) (allowing similar attempt at joinder based on collective "swarm" under BitTorrent). Plaintiffs here have not offered allegations or evidence comparable to the BitTorrent "swarms" that have divided a number of district courts.

for support for denying severance here. The majority relies on general language from Iglesias v. Mutual Life Insurance Co. of New York, 156 F.3d 237 (1st Cir. 1998), abrogated on other grounds by Global NAPS, Inc. v. Verizon New England Inc., 603 F.3d 71 (1st Cir. 2010), but at the same time must distinguish Iglesias on its facts, and on the Fourth Circuit's conclusory treatment in a quite different context in Courthouse News Service v. Schaefer, 2 F.4th 318, 325 (4th Cir. 2021).

Iglesias applied the difference between compulsory and permissive counterclaims between the same parties. Even where plaintiff's claims and the defendant's counterclaim in Iglesias arose between the same parties, arose out of the same employment relationship, and arose at the same time, that was not enough to treat the counterclaim as compulsory. 156 F.3d at 241-42. In this case, plaintiffs' claims against the different defendants arose at the same time, but here we are also dealing with the quite different problems posed by joining claims against multiple and independent defendants, with the accompanying effects on jurisdiction that we see here. Iglesias offers little support.

The most remarkable feature of the majority's treatment of the severance question is the absence of support from any remotely analogous case. The majority's best offering is Courthouse News Service, where the Fourth Circuit allowed joinder of the plaintiff's First Amendment claims against the clerks of

- 62 -

two county courts in Virginia. 2 F.4th at 325. The Fourth Circuit quoted the phrase "logical relationship" and allowed the joinder because the plaintiff alleged identical claims against similarly situated defendants, without further explanation. The Courthouse News Service case was not against two competitors acting independently of one another. It was against two similarly situated public officials pursuing the same course of conduct. It is not difficult to understand the Fourth Circuit's impatience with the severance issue, especially in the absence of any argument for resulting prejudice to either defendant, but it offers little insight for cases of alleged unfair competition like this one.

The majority also takes aim at the patent, trademark, and copyright cases that offer us the closest guidance here. It targets one of the district court cases, Golden Scorpio Corp. v. Steel Horse Bar & Grill, 596 F. Supp. 2d 1282 (D. Ariz. 2009), for close attention, ante at 46, but even that shot at the selected target misfires. The plaintiff in Golden Scorpio sued thirteen independent defendants for infringing its trademark. The district court ordered severance, invoking the general proposition that "allegations against multiple and unrelated defendants for acts of patent, trademark, and copyright infringement do not support joinder under Rule 20(a)." 596 F. Supp. 2d at 1285. The majority tries to distinguish Golden Scorpio, but on grounds that were not relied upon in Golden Scorpio itself: the defendants were in

different states, and the complaint was silent about the time for the presumably contemporaneous and ongoing alleged trademark violations.  The attempted distinctions are not persuasive for Golden Scorpio, let alone for so many other cases.

Given the absence of remotely comparable precedents for joinder here and the weight of persuasive authority from cases alleging unfair competition by independent competitors infringing the same patent, trademark, or copyright, I respectfully submit that severance was certainly the better course here and even the only sound course, once the jurisdictional consequences are understood.[13]

The stakes under CAFA for this question of misjoinder of these claims under state law may well be even higher than under

---

[13] While I believe the district court erred in denying severance, I recognize that the common factual and legal issues in plaintiffs' claims against Wal-Mart and Costco could easily lead a court to coordinate discovery and other pretrial proceedings for the sake of efficiency, or perhaps coordination and/or consolidation under Federal Rule of Civil Procedure 42(a) and state-court analogues.  Such arrangements are the heart of multi-district litigation under 28 U.S.C. § 1407 and are common in many ad hoc arrangements in federal and state courts.  But coordination for the sake of efficiency does not require or justify full-fledged joinder.  The choice between formal joinder or severance can often have powerful procedural consequences, including venue, personal jurisdiction, and control of the timing of appeals, and in a case like this one, federal jurisdiction.  For the different consequences of consolidation under Rule 42(a), see Hall v. Hall, 584 U.S. 59 (2018) (reviewing limited effects of consolidation and allowing separate appeal from final judgment in one of two consolidated cases).

patent and copyright cases, in which federal courts will have jurisdiction over all the claims, whether they are joined or severed. Under CAFA, the severance issue may control whether a defendant can actually exercise the right to have the case heard in federal court, as it would in a stand-alone case against that defendant. That right to have more actual and putative class actions heard in federal courts is the central goal of CAFA. See Pub. L. 109-2, § 2, 119 Stat. 4 (2005) (congressional findings and purposes to assure fair adjudication of class actions by hearing more in federal courts).

Costco was the only non-local defendant among the four co-defendants originally named by the plaintiffs (Costco, Wal-Mart, Walgreens, and CVS). If the claims against Costco had been severed as requested, the district court would have retained jurisdiction over plaintiffs' claims against Costco by relying either on its standard diversity jurisdiction, 28 U.S.C. § 1332(a)(1), or CAFA jurisdiction under 28 U.S.C. § 1332(d). Because the local controversy exception applies to the joined case, the district court's denial of severance deprived Costco of a federal forum to which it was otherwise entitled.

To be clear, I do not contend that denial of a federal forum should always entitle a defendant to severance. Instead, courts must "examine whether permissive joinder would comport with the principles of fundamental fairness or would result in prejudice

to either side." <u>Coleman</u> v. <u>Quaker Oats Co.</u>, 232 F.3d 1271, 1296 (9th Cir. 2000) (internal quotations omitted).  In a case like this one, where plaintiffs allege no concerted conduct and their claims against various defendants lack any logical relationship, the case fails the requirements for permissive joinder of defendants under Rule 20(a)(2) and borders on fraudulent misjoinder.  Given the absence of a series of common transactions or occurrences, plus the clear bases for federal jurisdiction over plaintiffs' claims against Costco in the absence of joinder, denial of a federal forum to Costco would result in prejudice.  The district court thus abused its discretion in denying Costco's motion to sever.  The district court's continued exercise of federal jurisdiction over the claim against Costco was proper. This means that only plaintiffs' claims against Wal-Mart should be remanded to Puerto Rico courts under CAFA's local controversy exception.

## II.  **Summary Judgment for Costco**

Because I believe the district court had jurisdiction over plaintiffs' claims against Costco, I would also address the merits of the district court's grant of summary judgment to Costco. I would affirm summary judgment for Costco for the reasons given by the district court.

Summary judgment was proper if "there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). As the parties opposing summary judgment, plaintiffs needed to offer evidence of "specific facts sufficient to deflect the swing of the summary judgment scythe." Theidon v. Harvard Univ., 948 F.3d 477, 494 (1st Cir. 2020) (quoting Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003)). "For this purpose, [they] cannot rely on 'conclusory allegations, improbable inferences, acrimonious invective, or rank speculation.'" Id. (quoting Ahern v. Shinseki, 629 F.3d 49, 54 (1st Cir. 2010)).

On appeal, plaintiffs assert only their claim of unfair competition under Article 1802 of the Puerto Rico Code, P.R. Laws Ann. tit. 31 § 5141, which establishes a general tort action under Puerto Rico law: "A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." Id. To recover under Article 1802, a plaintiff must show "(1) a duty requiring the defendant to conform to a certain standard of conduct, (2) a breach of that duty, (3) proof of damage, and (4) a causal connection between the damage and the tortious conduct." Baum-Holland v. Hilton El Con Mgmt., LLC, 964 F.3d 77, 87 (1st Cir. 2020) (footnote omitted) (quoting Blomquist v. Horned Dorset Primavera, Inc., 925 F.3d 541, 547 (1st Cir. 2019)).

Here, plaintiffs argue that Costco had a duty to avoid unfair competition, which they locate in the Puerto Rico Antitrust

Act ("Act 77"). Section 259(a) of Act 77 provides: "Unfair methods of competition, and unfair or deceptive acts or practices in trade or commerce are hereby declared unlawful." P.R. Laws Ann. tit. 10 § 259(a). Act 77 does not itself create a private cause of action. See id. § 268(a); Diaz-Ramos v. Hyundai Motor Co., 501 F.3d 12, 15 (1st Cir. 2007) (affirming dismissal of § 259 claim: "The [Puerto Rico] Antitrust Act explicitly states that there is no private right of action for a violation of section 259(a) . . . .").

Plaintiffs argue, however, that a violation of Act 77 triggers the right to bring an action under Article 1802, Puerto Rico's general tort statute. Relying on Puerto Rico case law, the district court agreed with the general proposition that claims for unfair competition are cognizable under Article 1802. In the hearing on cross-motions for summary judgment, the district court said it was "persuaded by" defendants' argument that the language of the executive orders did not create a specific duty on the part of exempt retailers like Costco to avoid selling non-essential goods. The court found that a duty to refrain from non-essential sales "cannot be found simply in the . . . broad language of [Act] 77," with its generic duty to avoid unfair competition. Thus, the district court concluded that plaintiffs' unfair competition claim against Costco under Article 1802 failed for lack of any duty.

In a nutshell, I agree. In addition, plaintiffs have not plausibly alleged that Costco actually violated the terms of

the executive orders. Costco was allowed to remain open because it sold essential goods. The executive orders did not expressly or implicitly require a merchant like Costco to divide its inventory into "essential" and "non-essential" categories and to refuse to sell non-essential goods. Moreover, each executive order included a provision entitled "Non-Creation of Enforceable Rights" stating:

> This Executive Order is not intended to create any rights, substantive or procedural, enforceable at law or equity, by any person or entity, in any matter, civil, criminal, or administrative, against the Government of Puerto Rico or its agencies, officials, employees, or any other person.

Plaintiffs' claims against Costco run directly contrary to this disclaimer. Plaintiffs seek to leverage the executive orders to create substantive rights in favor of plaintiffs enforceable at law against "any other person," i.e., Costco, for selling non-essential goods when it was properly open to sell essential goods.

Even if plaintiffs could overcome those problems, we could still affirm summary judgment for Costco on an alternative ground that it argued before the district court and in this court — causation. Plaintiffs failed to offer any evidence from which a reasonable factfinder could conclude that Costco's actions caused any injury to any plaintiffs. Article 1802 requires a

plaintiff to prove that the defendant's breach of its duty was a proximate cause of the damage suffered by plaintiffs. Baum-Holland, 964 F.3d at 88. "This causation analysis requires that two elements be met: (1) the defendant's breach of its duty of care must be the actual cause of the injury suffered by the plaintiff, and (2) the injury suffered must have been reasonably foreseeable to the defendant." Id.

To defeat summary judgment on the merits here, plaintiffs needed to offer evidence that losses they suffered during the 72-day partial lockdown were both actually and proximately caused by Costco's sales of non-essential goods. Plaintiffs themselves allege that their shops were required to close by the executive orders, not because of Costco's conduct. Plaintiffs' theory of causation is that if Costco had refrained from selling non-essential goods, Puerto Rico consumers would have delayed their purchases of non-essential goods until the executive orders expired and then would have purchased equivalent goods from the local retailer plaintiffs instead of from Costco and other defendants.

On this record, a jury finding of causation on that theory would be unreasonable. First, there is no evidence that, if Costco had refrained from selling non-essential goods, consumers would have merely delayed such purchases rather than either forgoing the purchases or buying through channels other

than brick-and-mortar stores. For instance, plaintiffs pointed to a particularly high volume of lost revenue from Mother's Day in May 2020. To recoup those lost profits, however, plaintiffs' theory of causation required them to show that consumers would have delayed their Mother's Day purchases until after the executive orders had expired, well after Mother's Day. The record contains no support for this implausible premise. In addition, customers unable to buy non-essential items might have bought them online and had them shipped directly to their homes, an especially common practice during the pandemic that was permitted under the executive orders.

The district court declined to dismiss plaintiffs' claims based on this creative theory of harm, but at summary judgment, they did not supply evidence to support it. They seek to recover revenue on every product they claim they would have sold over the 72 days, but they do not identify which of these products Costco also sold and did not seek to prove that Costco sold reasonable substitutes for every item plaintiffs claim they would have sold. To prove that the plaintiffs' lost sales went to Costco, plaintiffs would have needed to meet a substantial burden by offering evidence on "the universe of products" that both they and Costco sold "that are considered 'reasonably interchangeable by consumers for the same purposes.'" Flovac, Inc. v. Airvac, Inc., 817 F.3d 849, 854 (1st Cir. 2016) (quoting United States v.

E.I. du Pont de Nemours & Co., 351 U.S. 377, 395 (1956)). Generally, to determine which products are "in the same market" and "interchange[able]" for consumers, a party must ask "expert economists to testify." U.S. Healthcare, Inc. v. Healthsource, Inc., 986 F.2d 589, 599 (1st Cir. 1993). Experts look to "[u]sage patterns, customer surveys, actual profit levels, comparison of features, ease of entry, and many other facts" to measure the "interchangeability of products" within a market. Id.

Plaintiffs did not offer any expert testimony on these factual elements, as would have been needed to support their theory of causation. After plaintiffs failed to submit expert reports by the case management deadline, the court denied their requests for an extension. Plaintiffs do not challenge that denial. They rely instead on general assertions from their own accountants that plaintiffs' and defendants' stores sell some similar items and are in close proximity. (Some of these assertions are made in "unsworn statements," but let's bypass that flaw.) This evidence is not sufficient to meet plaintiffs' burden of producing evidence of specific facts to defeat summary judgment. Theidon, 948 F.3d at 494. The only reasonable conclusion from this record is that many of plaintiffs' sales were permanently lost for reasons wholly unrelated to Costco's conduct. The district court correctly granted summary judgment for Costco on plaintiffs' unfair competition claim under Article 1802.

For these reasons, I respectfully dissent from the remand of plaintiffs' claims against Costco to the Puerto Rico courts. I would affirm summary judgment for Costco on the merits.